UNITED STATES of America,
Plaintiff–Appellee,

v.

Roberto CERVANTES, Defendant–
Appellant.

No. 93–2194.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 10, 1994.

Decided March 22, 1994.

Barry R. Elden, Asst. U.S. Atty., John J. Tharp, Jr. (argued), John J. Tharp, Jr., Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Julius L. Echeles (argued), Chicago, IL, for defendant-appellant.

Before POSNER, Chief Judge, and ESCHBACH and KANNE, Circuit Judges.

POSNER, Chief Judge.

Roberto Cervantes was convicted by a jury of the illegal sale of cocaine and sentenced to 57 months in prison. His appeal complains principally of the district judge's refusal to suppress as evidence money seized from Cervantes when he was arrested. The circumstances of that seizure were a little strange. An undercover agent, together with an informant, agreed to purchase several hundred grams of cocaine from a dealer named Diaz. They gave Diaz $9,500 in cash for the cocaine and he was to obtain it from his source and deliver it to them at the gas station where they had handed over the cash. The government had recorded the serial numbers of the bills, and the transaction was under observation by other federal agents, who followed Diaz when he left with the money. After walking a few blocks Diaz entered a blue Chevrolet driven by (it turned out) the defendant, Cervantes. They drove around for a while and then Cervantes dropped off Diaz near the gas station, where he delivered the cocaine as agreed. Cervantes drove away and the two officers who were following him stopped him after they observed him commit several traffic violations—speeding and twice failing to use his turn signal before turning. He got out of his car, and the officers out of theirs. As they approached him, they noticed that he was trying to stuff a large wad of money into the right front pocket of his tight jeans. When they asked him for his driver's license, which was in the same pocket, he had to remove the money to get at the license. The officers had been instructed by their superiors not to reveal that they were investigating a drug offense, lest they compromise the informant. They were to pretend to be stopping Cervantes merely for a traffic violation. They were to use this pretense to identify him, and having done that they were to let him go on his way all unsuspecting.

The encounter did not develop according to the script. Officer Scherr testified at the suppression hearing that he asked Cervantes "in a joking fashion 'Where is your pistol?'" to which Cervantes replied, "'My coffee-cup holder.'" So Scherr looked through the window of the car and, sure enough, there in plain view sitting on the coffee-cup holder between the driver's and the passenger's seats was a pistol. The officers placed Cervantes under arrest for illegal possession of a weapon, seizing the pistol, the cash, and the car in the process. The serial numbers on the cash (some $7,800) taken from Cervantes were found to match (all but $375, which Cervantes must have had before he received the money from Diaz)' those of the "buy" money that the undercover agent had given Diaz for the drugs. Cervantes testified that the gun had been in the car, all right, but not in plain view; it had been in a Crown Royal bag (a felt bag in which Crown Royal whiskey is sold)·inside the coffee-cup holder, and the holder had a lid that was closed, so the only way Scherr could have found the gun was if he searched the car, opening any closed compartments that he encountered. And this, Cervantes testified, was precisely what had happened. Scherr, however, testified that the inventory search of the car (such a search is done routinely when a vehicle is seized) had not turned up any Crown Royal bag. The district judge believed Scherr and denied the motion to suppress the cash and the gun as evidence against Cervantes.

It turned out that Scherr's testimony about the inventory search had been inaccurate; a Crown Royal bag *had* been found in the car. The government advised the district judge of the mistake. Without holding a further evidentiary hearing the judge changed his mind about the respective credibility of Scherr and Cervantes. He decided that Scherr had lied about seeing the gun lying in plain view on top of the coffee-cup holder. He decided to suppress the gun but not the cash, on the ground that the officers' reason for seizing the cash had had nothing to do with the search of the car's interior. They saw the cash before they searched the car—before, so far as appears, they thought of searching the car. Although the plain-view doctrine does not authorize police to seize an innocent object in plain view to see whether it might be a guilty object after all, *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), and although a wad of cash is not in itself a suspicious object, a wad of cash in the hands of a person who the police have good reason to believe just received it in exchange for a delivery of illegal drugs *is* suspicious and indeed enough so to give the police probable cause to believe it evidence of criminal activity, empowering them to seize it without violence to the principle of the *Hicks* decision.

Cervantes, however, tenders the following syllogism: The arrest was illegal, being based on a bogus sighting of a weapon. The officers would not have seized the cash, and hence the incriminating serial numbers would not have been discovered, had they not arrested Cervantes—for their instructions were to let him continue on his way undisturbed after they identified him. The obtaining of the serial numbers was therefore the fruit of an illegal arrest and the evidence that the numbers matched that of the buy money, and the money itself, should have been suppressed on the authority of *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). We do not find this logic compelling; in fact the only questionable aspect of the district judge's ruling was the suppression of the gun.

The surveillance of Cervantes and Diaz gave the officers who stopped Cer-

vantes' car a reasonable suspicion that he had just sold cocaine to Diaz and had the proceeds of the sale in his possession. This reasonable suspicion would have justified the officers in making an investigatory stop (a "Terry stop") of Cervantes, and when the person stopped is in a car the officers are entitled to search not only the person but also the car, including accessible closed compartments in it, for possible weapons that might endanger the officers. *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983). Such a search would of course have turned up Cervantes' gun. It is true that the officers did not purport to make an investigatory stop. They pretended to be stopping Cervantes for traffic violations. But we do not see how such a ruse can confer a constitutional privilege on the target of it. Assuming that Scherr did lie and that the officers searched through the interior of the car (contrary to their instructions—which makes us less certain than the district judge that Scherr was lying when he said the gun was in plain view—and, after all, Crown Royal bags are used for purposes other than just concealing guns), they did nothing more than the Fourth Amendment as interpreted in the *Terry* line of cases authorized them to do. The lie, if it was a lie, was gratuitous.

It is entirely possible that the surveillance which preceded the stop gave the officers more than reasonable suspicion—gave them probable cause to arrest Cervantes for drug offenses, or, independently of any arrest, probable cause to search the car for the proceeds of the sale to Diaz. No warrant is required to search a car, including its closed compartments, if there is probable cause to believe that contraband or evidence of crime will be found in it. *California v. Acevedo*, 500 U.S. 565, 579–80, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991). It seems to us that if the government has a right, whether based on reasonable suspicion or probable cause, to search one's car, and does so, one has no right to complain even if the ostensible ground for the search was different and improper. *United States v. Fergu-*

*son,* 8 F.3d 385, 391–92 (6th Cir.1993) (en banc); *United States v. Cannon,* 15 F.3d 896, 898–901 (9th Cir.1994). This is a corollary of the principle that the existence of reasonable suspicion or probable cause depends not on what the particular officers involved believed but on what a reasonable officer in their position would have believed. *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *Horton v. California,* 496 U.S. 128, 142, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990). The exclusionary rule is intended to protect the privacy and property rights of the citizen, rather than to punish law enforcement officers for trickery, deceit, or even telling lies under oath. No right of privacy (or of property) of Cervantes' was invaded by the search of his car; he had sacrificed his vehicular privacy by engaging in conduct that gave the police ample grounds for believing that he was using the vehicle for drug trafficking.

 Cervantes was released shortly after being arrested—and the government, continuing the ruse that his arrest had had nothing to do with drugs—returned the money to him. (It didn't need the money for the trial. It relied on testimony by an officer who compared the serial numbers on the bills seized from Cervantes with the record of the serial numbers of the buy money.) He argues that the failure of his trial lawyer to bring out this fact at the trial demonstrates that the lawyer was ineffective. We cannot see how the fact could have been used to help Cervantes gain an acquittal. The money had been returned to him not because it did not constitute proceeds of a drug offense but to protect an informant and because, as we have just seen, it was not needed at the trial; all this would have come out at trial if he had tried to make something out of the return of the money. He points out that when he first inquired about the return of the money from the civil division of the U.S. Attorney's office he was told that all but $375 was being retained because it was the property of the Drug Enforcement Administration; this he says shows that the argument that the money was returned to him to avoid compromising the informant is phony. But the government was prepared to show that the communication from the civil division was made in error, by someone who didn't know about the potentially endangered informant; so again it is difficult to see how Cervantes would have benefited from a full airing of the circumstances of the money's return. Perhaps when a defendant has a hopeless case, throwing sand in the jurors' eyes is the best defense. But if a case is hopeless, a defendant is not entitled to a new trial even if his trial counsel fell below minimum standards of professional competence. For he cannot show prejudice from his counsel's incompetence if his case was hopeless. *Underwood v. Clark,* 939 F.2d 473, 475 (7th Cir.1991).

The other issues raised by the appeal do not merit discussion.

AFFIRMED.