UNITED STATES of America,
Plaintiff–Appellee,

v.

Christian Omar RIVERA,
Defendant–Appellant.

No. 03–3178.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 2004.

Decided June 14, 2004.

Bradley W. Murphy, Peoria, IL, for Plaintiff–Appellee.

Johnny P. Watts, Terre Haute, IN, pro se.

Before FLAUM, Chief Judge, COFFEY, and EVANS, Circuit Judges.

## ORDER

Christian Rivera pleaded guilty to one count of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), after the district court denied his motion to suppress money and cocaine seized by Drug Enforcement Agents ("DEA") when they searched his Nissan Pathfinder without a warrant. Rivera's guilty plea was conditioned on allowing him to appeal the district court's denial of his motion to suppress, and that appeal is before us now. We affirm.

## I. Background

We begin with the facts as found by the district court. The parties do not dispute these facts, and we review the court's factual findings for clear error, and do not substitute our judgment for that of the district court as long as its findings are supported in the record. *United States v. Mancillas,* 183 F.3d 682, 695 (1999). We see no error in the district court's factual determinations.

On June 3, 2002, at approximately 6:45 P.M., Shanisha Brown drove herself and passenger Charles Allen through the nearly vacant parking lot of a closed-down Kmart store en route to purchase drugs from the defendant Christian Rivera. Brown scanned the area for surveillance from her vantage point in the driver's seat, but apparently overlooked a group of DEA agents gathered in the parking lot in relation to an unrelated drug investigation. The agents, however, were not equally unobservant and noticed Brown's Cadillac Escalade because it was the only vehicle in the parking lot other than the agent's cars and those of some workers at a nearby construction site. Alerted to the Escalade by Agent Mark Kelling, Agent Jeff Marran watched as Brown drove slowly through the lot, looked around, and then turned onto a street behind the empty Kmart building. Based on his training and experience as a Palos Heights, Illinois, police officer assigned to a DEA task force, Marran suspected an impending drug transaction,[1] so he followed the Escalade around the building in his own car.

---

1. Marran stated at Rivera's suppression hearing that he has participated in about 100 narcotics investigations, and that about 20%

After turning onto the same street that the Escalade did as it exited the Kmart lot, Marran came upon Brown's vehicle parked behind a Nissan Pathfinder in another vacant lot-this one outside an unidentified industrial shop. The Escalade and the Pathfinder were the only vehicles outside the industrial shop-which appeared to be closed-and the vehicles were parked perpendicular to the marked spaces in the lot. Marran positioned his car out of sight and watched while Allen exited the Escalade and entered the Pathfinder through its passenger's side door. Marran relayed his observations to the other agents still in the Kmart parking lot, and let them know that he was going to approach the Pathfinder. Marran then moved his car alongside the passenger's side of the Pathfinder (apparently still unobserved by the occupants of either vehicle), exited and walked toward the Pathfinder's passenger's side window. At a distance of about five or six feet from the Pathfinder, Marran saw Allen hand a "bundle of cash" to the Pathfinder's driver, Rivera. (Tr. at 55.) Marran then drew his gun, moved toward the vehicle, opened the passenger's side door, and ordered Allen out of the Pathfinder. Their transaction interrupted, Allen dropped the money he was holding, and Rivera stuffed whatever he had in his hands under his seat.

By this time, additional agents arrived on the scene. Agents Chris Dillard and Rob Hatch went to the driver's side window with their guns drawn, and ordered Rivera out of the vehicle. Marran told Dillard and Hatch that Rivera had stuffed something under the seat. Dillard asked Rivera if he had any weapons or contraband, to which Rivera answered "no." Dillard next performed a safety pat-down

search of Rivera, which yielded nothing. The agents then reholstered their weapons, and Marran escorted Rivera to the front passenger seat of his squad car, where he read Rivera his Miranda rights. Marran's car was unlocked at all times during the encounter, and the door to the passenger's side where Rivera sat was open. Marran then left Rivera inside the unlocked vehicle and went to talk with Allen for a few minutes.

Meanwhile, Dillard was searching the Pathfinder for weapons. After finding the money that Allen had dropped on the passenger's side, Dillard looked under the driver's seat where Marran had seen Rivera stash something. There Dillard found two plastic bags containing money. Dillard continued to search the Pathfinder, and in the vehicle's rear hatch he discovered a package of what appeared to be a kilo or half-kilo of cocaine. The package was inside a unlocked, standard compartment that Dillard opened by turning a knob.

Dillard then approached Rivera, who was still sitting in Marran's squad car and apparently did not observe Dillard searching his vehicle. Dillard asked Rivera for consent to search the Pathfinder, and Rivera said yes.[2] Dillard asked Rivera if there were any illegal drugs in the Pathfinder, and Rivera told him about the half-kilo in the hatch, and that there was another package of cocaine hidden in the ceiling above the driver's seat. Dillard then found this package as well. Rivera further volunteered that he was there to sell Allen the half-kilo of cocaine. No weapons were found in Rivera's vehicle, but the agents did find a gun in Brown's Escalade. After finishing their search of both vehicles, the

---

of those took place inside cars in parking lots. (Tr. at 40.)

**2.** Dillard said he asked Rivera for his consent to search even though he had already

searched and found the drugs because he "wanted to see if [Rivera] would be honest with us about what was in his vehicle." (Tr. at 97.)

agents allowed Rivera to leave without placing him under arrest.[3] The entire encounter lasted about 10 minutes.

Rivera was arrested and indicted a week later on one count of possession with intent to distribute 460 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). Rivera thereafter filed a motion to suppress the cocaine and the money seized by the agents and alleged that the agents arrested him and searched his vehicle without probable cause or a warrant in violation of the Fourth Amendment. The government responded to Rivera's motion and contended that the agents' stop of Rivera was not an arrest that necessitated probable cause, but rather an investigatory stop based on reasonable suspicion that Rivera was engaging in an illegal drug transaction. The government further contended that the agents' subsequent search of Rivera and his Pathfinder was a valid extension of their investigatory stop, justified by the agents' need to search for weapons and ensure their safety. As such, they argued that the stop and search did not violate the Fourth Amendment and thus the drugs and money should not be suppressed.

The district court held an evidentiary hearing on Rivera's motion, and, after hearing testimony from Brown, Allen, and agents Marran and Dillard, agreed with the government that the agents' stop of Rivera did not violate the Fourth Amendment. Initially the court determined that the agents' stop of Rivera was based on reasonable suspicion that he was engaging or about to engage in a drug transaction. The court next found that the agents' investigatory stop did not become a full-blown arrest when they used their weapons because the agents suspected a drug transaction, which is a type of criminal activity that "often involves individuals

that are armed and dangerous" and therefore necessitates the use of weapons as a safety precaution. (R30 at 10.) Finally, the court determined that the agents' search after the initial stop was also proper because "when officers have reasonable suspicion to make an investigatory stop and 'the person stopped is in a car[,] the officers are entitled to search not only the person but also the car, including accessible closed compartments in it, for possible weapons that might endanger the officers.'" R30 at 11 (quoting *United States v. Cervantes,* 19 F.3d 1151, 1153 (7th Cir. 1994)). The court denied Rivera's motion to suppress. Rivera thereafter entered a plea of guilty to the drug charge, with a reservation of his right to appeal the court's denial of his motion to suppress. Rivera now appeals that decision.

## II. Issues

Rivera argues that the district court improperly denied his motion to suppress because: 1) the information possessed by the agents before they conducted their stop did not amount to reasonable suspicion that he was engaged in criminal activity; and 2) even if the agents did possess reasonable suspicion to stop him initially, the agents' show of force and subsequent search of him and his vehicle exceeded the allowable scope of the initial stop to such a degree that the stop was transformed into a full-blown arrest that required probable cause, and not just reasonable suspicion.

## III. Analysis

We review *de novo* the district court's determinations that the agents possessed reasonable suspicion to stop Rivera, seize him temporarily, and search him and his vehicle. *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d

---

3. Brown was also allowed to leave, but the agents took Allen to his home where the agents confiscated more weapons.

911 (1996). In doing so, we examine the totality of the circumstances as they were presented to the agents at the time the stop occurred. *See United States v. Odum,* 72 F.3d 1279, 1284 (7th Cir.1995). The agents were justified in stopping Rivera initially if they had reasonable suspicion, supported by "specific and articulable facts" that Rivera had committed, was committing, or was about to commit, a crime. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Raibley,* 243 F.3d 1069, 1074 (7th Cir.2001). The agents' actions after the initial stop were permissible (and thus did not convert the stop into an arrest requiring probable cause) if the degree of intrusion on Rivera was reasonably related in scope to the circumstances which justified the stop in the first place. *United States v. Swift,* 220 F.3d 502, 506 (7th Cir.2000).

 We begin with the initial stop, and Rivera's argument that the agents did not have sufficient information to reasonably suspect that he was committing or about to commit a crime when they first detained him. Agent Marran effectuated the initial stop, so we examine the circumstances known to him at the time he approached the Pathfinder and ordered Allen out of the vehicle. Marran knew the following information: 1) Brown had driven her Escalade slowly through the nearly vacant parking lot of a closed down Kmart store; 2) Brown and Allen appeared to be engaging in counter-surveillance; 3) Brown had driven the Escalade onto a side street behind the Kmart; 4) Brown was now parked directly behind another vehicle, Rivera's Pathfinder; 5) both vehicles were parked perpendicular to the marked parking spaces in the otherwise empty lot of a closed business; 6) Allen had left the Escalade and entered the Pathfinder on the passenger's side; and 7) once inside the vehicle Allen was in the process of giving the driver, Rivera, a "bundle of cash." Using these objective facts, Marran made "permissible deductions" based on his own knowledge of drug transactions-many of which take place between vehicles in parking lots and involve the exchange of large sums of cash-to form his suspicion that, at that moment, Rivera and Allen were engaging in or about to engage in a drug transaction. *See United States v. Cortez,* 449 U.S. 411, 419, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ("[W]hen used by law enforcement officers, objectives facts, meaningless to the untrained, can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person and for action on that suspicion."). Slow-moving vehicles engaging in counter-surveillance, *see United States v. Carrillo,* 269 F.3d 761, 767 (7th Cir.2001); *United States v. Lechuga,* 925 F.2d 1035, 1041 (7th Cir.1991), clandestine meetings between vehicles in parking lots or sparsely-populated areas, *Mancillas,* 183 F.3d at 697; *United States v. Chaidez,* 919 F.2d 1193, 1195 (7th Cir. 1990), individuals in possession of large amounts of cash, *see Cervantes,* 19 F.3d at 1153 (7th Cir.1994); *United States v. Chhien,* 266 F.3d 1, 8–9 (1st Cir.2001); *Conrod v. Davis,* 120 F.3d 92, 97 (8th Cir.1997)-all these circumstances may appear innocuous in and of themselves, but taken together and viewed through the eyes of an experienced law enforcement officer these circumstances amount to reasonable suspicion that a drug transaction is taking place. *See Cortez,* 449 U.S. at 418–19, 101 S.Ct. 690; *Chaidez,* 919 F.2d at 1199 ("Something was afoot; perhaps its better to ask the probability question the other way 'round-what was the chance that [Rivera] was engaged in behavior not related to drugs? We think it trivially small.' "); *Cervantes,* 19 F.3d at 1153 ("although a wad of cash is not in itself a suspicious object, a wad of cash in the hands of a person who the police have good reason to believe just received it in exchange for a delivery of illegal drugs *is*

suspicious") (italics in original). Thus we have no trouble determining that, based on the information available to him and his experience and knowledge of drug transactions, it was reasonable for Agent Marran to suspect that Rivera and Allen were engaging in criminal activity and therefore effectuate an investigatory stop.

Rivera next argues that, even if the agents' initial stop was justified by reasonable suspicion that he was engaged in a drug transaction, the agents exceeded the allowable scope of their investigatory stop by forcing him out of the vehicle with guns drawn and then searching him and his Pathfinder. Rivera contends that the agents needed probable cause and not just reasonable suspicion to justify their actions.[4] *See Swift,* 220 F.3d at 506 (noting that probable cause is needed to effectuate an arrest). We disagree. The case law in this circuit is clear on both points: once the agents had reasonable suspicion to suspect that Rivera was engaged in a drug transaction, they were justified in drawing their weapons to effectuate the stop and searching Rivera and his vehicle for weapons to ensure their own safety. No probable cause was needed to justify the agents' actions.

Individuals engaged in drug transactions are presumed to be armed and dangerous. *See United States v. Serna–Barreto,* 842 F.2d 965, 967 (7th Cir.1988) ("many drug traffickers are armed and they sometimes shoot policemen"); *see also United States v. Hishaw,* 235 F.3d 565, 570–71 (10th Cir.2000); *United States v. Diaz-Lizaraza,* 981 F.2d 1216, 1221 (11th Cir.1993); *United ed States v. Anderson,* 859 F.2d 1171, 1177 (3d Cir.1988). In order for law enforce-ment officers to protect themselves when stopping individuals suspected of drug activity, they can approach the suspect with guns drawn without converting the stop into a full-blown arrest requiring probable cause. *See Lechuga,* 925 F.2d at 1040; *United States v. Serna–Barreto,* 842 F.2d 965, 967–68 (7th Cir.1988). And, after stopping an individual suspected of drug activity, they can search both the individual and his vehicle for weapons without exceeding the scope of the circumstances that originally justified the stop. *See Mancillas,* 183 F.3d at 699–700; *United States v. Brown,* 133 F.3d 993, 998 (7th Cir.1998); *Cervantes,* 19 F.3d at 1153; *United States v. Holifield,* 956 F.2d 665, 668–69 (7th Cir.1992). The permissible scope of the officers' search extends to the drug trafficking suspect's entire vehicle, including any "accessible closed compartments in it, for possible weapons that might endanger the officers." *Cervantes,* 19 F.3d at 1153 (citing *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)). And the justification for such a search does not dissipate once the suspect has been removed from the vehicle, as the "fear generated from the 'risk of reentry' is a reasonable one." *Brown,* 133 F.3d at 998.

Based on the agents' reasonable suspicion that Rivera was engaged in a drug transaction, they were allowed to approach his vehicle with their guns drawn,[5] and then search both him and his entire vehicle for weapons. The reasonable suspicion that justified the agents initial stop was not subject to dissipation until after the agents had performed all of these actions, and thus none of these actions required

---

**4.** The government argues that the agents did have probable cause both to arrest Rivera and search his Pathfinder. But the government waived this argument by not presenting it to the district court. *See Hojnacki v. Klein–Acosta,* 285 F.3d 544, 549 (7th Cir.2002) Thus

we express no opinion as to whether, on the facts presented, the agents had probable cause to temporarily seize Rivera and search his vehicle.

**5.** Although not necessary to legitimize the agents' investigatory stop, we note that the

probable cause. *See Mancillas*, 183 F.3d at 699–700; *Brown*, 133 F.3d at 998; *Holifield*, 956 F.2d at 668–69. And although the agents discovered money and cocaine instead of weapons during the course of their legitimate investigatory stop of Rivera and his vehicle, the Fourth Amendment does not require that this contraband be suppressed. *Long*, 463 U.S. at 1050, 103 S.Ct. 3469 ("If, while conducting a legitimate search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.").

Therefore, the district court's decision to deny Rivera's motion to suppress is

AFFIRMED.

agents' actions after they searched Rivera served to dispel any threat that the stop turned into an arrest requiring probable cause. *See, e.g., Chaidez*, 919 F.2d at 1196–1201. Here the agents reholstered their

weapons, did not restrain Rivera's movement, and eventually allowed Rivera to leave in his own vehicle even though-especially after finding the cocaine-there is no doubt the agents had probable cause to arrest him.