NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 10, 2013
Decided July 31, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-1539

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>GREGORY BLALOCK,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 11 CR 570-1<br><br>Ruben Castillo,<br>*Chief Judge*. |

**O R D E R**

Federal agents in Chicago witnessed what they believed was a drug transaction between defendant-appellant Gregory Blalock and Marcel Cook. Some agents stopped and searched Cook's car, in which Blalock had been a passenger just moments before. Other agents approached Blalock, who fled. Those agents caught Blalock and found that he was carrying a bag of cash. The agents then obtained the consent of Blalock's girlfriend to search the apartment she was renting for his use. The agents found crack cocaine and other evidence in addition to the money.

Blalock and Cook were indicted together, and they both moved to suppress, claiming that the evidence was tainted by arrests without probable cause. After the district court denied

both motions, Blalock pled guilty to possessing and distributing crack, 21 U.S.C. § 841(a)(1), and possessing a firearm as a convicted felon, 18 U.S.C. § 922(g). He was sentenced to a total of 180 months in prison. Cook pled guilty to a drug charge. In their separate plea agreements, each defendant reserved the right to challenge the denial of his motion to suppress. Cook's appeal has already been resolved. We agreed with appointed counsel that the appeal was frivolous and thus granted the lawyer's motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967). See *United States v. Cook,* 500 F. App'x 537 (7th Cir. 2013). In that decision, we concluded that it would be frivolous for Cook to argue that the agents had lacked probable cause to arrest him after witnessing what they reasonably believed was a drug transaction. In this appeal, Blalock raises essentially the same argument that was rejected in *Cook*. Blalock's argument is even weaker than Cook's. The agents had authority to stop Blalock for investigatory purposes, but when they tried to do so, he added to their suspicions by running from them.

The district court denied Blalock's motion to suppress without an evidentiary hearing. In lieu of live testimony, the court relied on police reports and affidavits, which did not present any factual disputes that would have required a hearing. Blalock did not object to proceeding in this manner and does not make an issue of it here. The following facts are drawn from the documents submitted to the district court.

Federal agents received a tip in late 2010 concerning drug trafficking at an apartment building on the south side of Chicago. In March 2011 they contacted the building manager, who confirmed receipt of complaints from tenants about drug dealing in a specific apartment. Two days later, while watching the apartment's parking lot and entrances, the agents saw a pickup truck—driven by Blalock—pass through the lot, circle the block, and then return. Blalock parked his truck and walked into the building, stopping along the way to peer into the windows of the agents' surveillance van. Almost simultaneously, two other men—one of whom the agents recognized as the brother of the subject of the informant's tip—arrived in another vehicle and also entered the building. Forty minutes later, Blalock left the building through the back door. He was carrying a jacket slung over his left hand, apparently concealing something bulky. Cook then drove into the parking lot, and Blalock climbed in the passenger's side of the car. The agents could not see what happened inside the car, but they watched as Cook left the parking lot and drove just halfway around the block before stopping. Blalock exited Cook's car holding a brown paper bag and walked into the apartment building through the front door. Concluding that a drug deal had probably just occurred, agents approached the rear entrance of the building. Other agents stopped Cook's car.

When Blalock saw the agents—who were wearing vests and police insignia—he ran away from them toward the elevator. Blalock ignored the agents' calls to stop. They reached the elevator just before the doors closed. Blalock's left hand was hidden under his jacket. When

he disregarded a command to show his hands, an agent drew his gun and ordered Blalock to lie on the floor. Blalock complied and dropped the paper bag. An agent looked inside and found currency. (A later count would show the amount to be approximately $7,000.) The agents handcuffed Blalock, searched him for weapons, and detained him in a squad car. Meanwhile, agents also arrested Cook, who admitted driving without a license or proof of insurance. The agents found 244 grams of crack in the car's center console.

The building manager was interviewed and identified Blalock as the boyfriend of a lessee, Sherita Burt, who was renting the apartment for him in her name. Burt consented to a search of the apartment after the agents had assured her that she was not the focus of the investigation. Inside the apartment was a handgun, 200 more grams of crack, and other evidence. Blalock was transported to the police station where he gave a confession after receiving *Miranda* warnings.

Blalock's motion to suppress encompassed the bag of money, the items in the apartment, and his incriminating statements. The motion rested on his contention that he was arrested without probable cause, which he argued tainted all the later seizures and his statements. He did not challenge Burt's consent to search. The district court denied the motion, concluding that the informant's tip about drug dealing at the apartment building and the agents' observations of activities consistent with drug trafficking had provided probable cause to arrest Blalock. Because there was probable cause, the court reasoned, the arrest had not tainted any of the seized evidence, including the items found during the search of Burt's apartment. The court also found in any event that the agents had reasonable suspicions about Blalock sufficient to support a brief investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), which led to the discovery of the cash and provided further support for probable cause for arrest.

On appeal the parties debate whether the agents had probable cause to arrest Blalock. Our non-precedential decision in *Cook* effectively answered that question yes. That decision is not binding on this panel, but we agree with it. In Blalock's case, moreover, probable cause was even stronger because of his flight. The agents certainly had reasonable suspicion to approach and stop Blalock to investigate actions consistent with a drug deal, including his swapping a package for a paper bag while riding just half a block in a car with someone who had picked him up at an apartment building where tenants were complaining about drug trafficking. See *Terry*, 392 U.S. at 21–22; *United States v. Kenerson*, 585 F.3d 389, 392–93 (7th Cir. 2009); *United States v. Ocampo*, 890 F.2d 1363, 1368 (7th Cir. 1989). After Blalock saw the agents, ran for the elevator, and refused an order to show his hands, the agents were justified in looking into the dropped paper bag to make sure it did not contain weapons. See *United States v. LePage*, 477 F.3d 486, 488 (7th Cir. 2007); *Cady v. Sheahan*, 467 F.3d 1057, 1061–62 (7th Cir. 2006). At that point the totality of the circumstances readily gave the agents probable cause to arrest Blalock

based on their observation of an apparent drug deal, see *United States v. Parra,* 402 F.3d 752, 765 (7th Cir. 2005); *United States v. Funches,* 327 F.3d 582, 586–87 (7th Cir. 2003), Blalock's flight when he saw the agents approaching, see *United States v. Schaafsma,* 318 F.3d 718, 722 (7th Cir. 2003); *Tom v. Voida,* 963 F.2d 952, 959–60 (7th Cir. 1992), and the significant amount of currency in the paper bag. See *United States v. Moreland,* 703 F.3d 976, 988 (7th Cir. 2012); *United States v. Cervantes,* 19 F.3d 1151, 1153 (7th Cir. 1994). The initial stop and arrest were lawful, and Blalock was not entitled to suppress any of the evidence obtained by the stop, arrest, or later investigation.

AFFIRMED.