**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frank C. SANTORO, Defendant–Appellant.**

**No. 97–4034.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 8, 1998.

Decided Oct. 30, 1998.

Stephen P. Sinnott (argued), Office of the United States Attorney, Chicago, IL, Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Christopher T. Van Wagner (argued), Madison, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUMMINGS and ESCHBACH, Circuit Judges.

CUMMINGS, Circuit Judge.

After a jury returned a guilty verdict against Frank Santoro for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), the district court adopted the Presentence Investigation Report (PSR) and sentenced Santoro to 96 months' imprisonment. In determining Santoro's sentence, the district court increased Santoro's offense level because the offense involved three firearms (one level under U.S.S.G. § 2K2.1(b)(1)(A)); because Santoro had reason to believe one of the weapons would be used in connection with a felony (four levels under U.S.S.G. § 2K2.1(b)(5)); and because Santoro obstructed justice through perjury (two levels under U.S.S.G. § 3C1.1). Santoro appeals the district court's determination that he was responsible for three firearms, claiming that one of the weapons erroneously was included as relevant conduct. Additionally, Santoro appeals the district court's determination that he obstructed justice, claiming that his false testimony was not material.

On December 27, 1996, the Woodford State Bank was robbed in Wisconsin. Matthew

Wyss and Robert Wirth became suspects in the robbery, and on January 3, 1997, police stopped a car occupied by Wirth, Wyss and Wyss's wife. Officers found more than 50 grams of marijuana and a drug ledger. Among the names on the ledger was "Moose" with the notation "730." Wyss identified "Moose" as Santoro and "730" as Santoro's $730 drug debt. Two police officers, Steve McQuiad and Larry Keegan, went to Santoro's apartment to see if he had any information that could assist their investigation of the bank robbery. During the questioning, Santoro admitted that Wyss was his drug supplier and that he regularly bought marijuana from Wyss for resale. Santoro also admitted to owing Wyss the $730.

During the questioning, Santoro admitted that he had a weapon in the house and that he was a convicted felon. Santoro and Officer Keegan went to Santoro's bedroom and recovered a .380 semi-automatic handgun, three rounds of .380 caliber ammunition, and 16 rounds of nine millimeter ammunition. Santoro said Wyss had sold him the .380 handgun for $70.[1]

After Santoro was arrested, Officers McQuiad and Keegan questioned him at the Green County, Wisconsin Jail. Although Santoro professed to know nothing regarding the bank robbery, he did admit that he, Wyss, and Wirth had discussed plans to rob a drug dealer in Rockford, Illinois. Additionally, Santoro stated that he and Wyss had been partners in the sale of illegal drugs for six to nine months and that Wyss, fearing that he was being watched by the police, had stored his "stuff" at Santoro's apartment. Santoro further admitted that he had received a SKS semi-automatic assault rifle from Terry Grinnell but later traded it to Wyss for some marijuana.

At trial, Santoro contradicted his earlier statements made to the police. He claimed that he had possessed the nine millimeter and .380 firearms for protection; that he did not sell and was not involved with drugs; and that Wyss was not his drug supplier.

He further testified that he never intended to assist in the robbery of the drug dealer in Rockford. Throughout the trial, however, Santoro admitted to most of the elements of § 922(g)(1): that he possessed the .380 and that he was a felon. But Santoro attempted to raise a defense that the possession of the gun was necessary because of his need for protection. Judge Shabaz refused to give a jury instruction regarding Santoro's theory of defense, calling it a "ridiculous defense."

After the jury returned a guilty verdict, the district court sentenced Santoro to 96 months' imprisonment. In so sentencing Santoro, the district court held Santoro responsible for all three firearms (the .380, the nine millimeter, and the SKS assault rifle) and increased Santoro's base offense level by one under U.S.S.G. § 2K2.1(b)(1)(A). The district court also concluded that Santoro had obstructed justice by committing perjury when he testified that he possessed the weapons for protection, that he was not a criminal associate of Wyss and Wirth, that he had not conspired with Wyss and Wirth to rob a drug dealer, and that Wyss was not his drug supplier. For his obstruction, Santoro received a two level increase under U.S.S.G. § 3C1.1. Finally, the district court also increased Santoro's offense level by four under U.S.S.G. § 2K2.1(b)(5) because Santoro had reason to believe that the weapon he traded to Wyss would be used in a felony.

 With regard to Santoro's challenge of the district court's decision to include the assault rifle as relevant conduct, this Court reviews the district court's interpretation of the scope of the sentencing guidelines de novo and the district court's factual findings for clear error. *See United States v. Griffin*, 150 F.3d 778, 787 (7th Cir.1998); *see also United States v. Sykes*, 7 F.3d 1331 (7th Cir.1993). With regard to Santoro's challenge to the obstruction of justice increase, we normally review the district court's finding for clear error. *See United States v. Draves*, 103 F.3d 1328, 1337 (7th Cir.1997). A forfeited objection, however, is reviewed

---

1. During the prosecution of this case, Santoro maintained that he traded his nine millimeter handgun for the .380, even though he told the officers that he bought the .380 for $70. Since possession of neither the .380 nor the nine millimeter is contested, it is unnecessary to determine how Santoro came into possession of the .380.

for plain error. *See United States v. Newman*, 148 F.3d 871, 879 (7th Cir.1998).

On appeal, Santoro argues that the district court erred by including the assault rifle as relevant conduct under U.S.S.G. § 1B1.3(a)(2). The court erred, Santoro argues, because the increase was based on the finding that Santoro possessed the rifle after 1991—a finding, Santoro contends, that is inadequate to support the conclusion that the rifle should be counted as relevant conduct. Additionally, Santoro contends that because he admitted the elements of the offense, his untruthful testimony about other matters could not have been material and thus did not warrant an upward adjustment for obstruction of justice.

When a court determines the number of firearms involved in an offense under U.S.S.G. § 2K2.1(b)(1), it looks to the relevant conduct section of the guidelines (U.S.S.G. § 1B1.3(a)(2)) to determine how many firearms come within the same course of conduct or perhaps a common scheme or plan. *See United States v. Windle*, 74 F.3d 997, 1000–01 (10th Cir.1996); *United States v. Powell*, 50 F.3d 94, 104 (1st Cir.1995). Santoro argues that the district court concluded that the uncharged assault rifle was relevant conduct solely because Santoro possessed the weapon sometime after 1991, the year Santoro was prohibited from possessing the weapons because of his status as a felon. The district court's rationale, however, is more complex. The district court actually made a series of findings that, when combined, serve as a sufficient basis for counting the uncharged assault rifle as relevant conduct.

The district court first concluded, based on Terry Grinnell's testimony, that Santoro received the rifle from Grinnell "after 1993." The court, based on Santoro's 1997 confession to police, further found that Santoro later traded the assault rifle to Wyss for illegal drugs. Finally, Santoro admitted that he did not get involved in drug dealings with Wyss until the summer of 1996. Based on these findings, the district court, though not explicitly, concluded that Santoro possessed the assault rifle sometime in the last half of 1996, within six to nine months of Santoro's arrest for possession of the other two weapons.

In *Powell*, 50 F.3d at 104, the First Circuit enunciated a general rule that "the contemporaneous, or nearly contemporaneous, possession of uncharged firearms is, in this circuit, relevant conduct in the context of a felon-in-possession prosecution." Additionally, in *Windle*, the Tenth Circuit concluded that additional weapons should be included as relevant conduct because the firearms were possessed "throughout a four to five month period." *Windle*, 74 F.3d at 1000. The Tenth Circuit held that Windle's pattern of possessing illegal firearms over a relatively short period of time met the "same course of conduct" requirement. *See id.* at 1000–01. The fact that Santoro possessed the assault rifle and two other weapons within a six to nine month period is sufficient to meet the requirements of *Powell* and *Windle*. As such, the district court did not err in including the assault rifle as relevant conduct.

On appeal, Santoro also argues that because he admitted to the elements of the offense, any untruthful testimony relating to other matters is immaterial and thus not perjury. Because Santoro raises this argument for the first time on appeal, our review is limited to plain error. *See Newman*, 148 F.3d at 879.

Under U.S.S.G. § 3C1.1, a court will increase a defendant's offense level by two if the court finds that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution or sentencing of the instant offense." The court, although not required to make separate findings on each element of perjury, must determine whether the witness lied about "matters crucial to the question of his guilt." *United States v. Hickok*, 77 F.3d 992, 1008 (7th Cir.1996).

Santoro argues that since the court did not find that Santoro's false testimony was material, we should vacate his sentence. The district court, however, expressly determined that Santoro's testimony was material. At sentencing, the court noted Santoro's false testimony concerning the officers' entry into

his home, the reasons for his possession of the weapons, his criminal association with Wyss and Wirth, and his denial of plans to rob a drug dealer. The court went on to find expressly that "there was materially false information provided to the Court and the offense level should be increased by two."

Santoro's false statements clearly warrant an enhancement under § 3C1.1. Although Santoro was unsuccessful in obtaining a jury instruction regarding the necessity for him to possess the weapons, he clearly attempted to effect the outcome of the trial. His attempted defense, which the district court found to be perjurious and which Santoro concedes on appeal was false, was an attempt to obstruct the prosecution of his case. As such, an upward adjustment is appropriate.

Santoro's sentence is AFFIRMED.