**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gregory C. LAFLEUR, Defendant–Appellant.**

**No. 01–2390.**

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 30, 2002.
Decided April 25, 2002.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

ORDER

Gregory LaFleur pleaded guilty to one count of possession of firearms by a felon in violation of 18 U.S.C. § 922(g). For that, he received a sentence of 24 months' imprisonment, three years' supervised release, and a $100 special assessment. On appeal LaFleur argues that the district court erred in two ways: first, in its finding that LaFleur did not possess the firearms "solely for lawful sporting purposes or collection" and thus was not entitled to a reduction in offense level under U.S.S.G. § 2K2.1(b)(2), and second, in its finding that LaFleur's possession of a third firearm was relevant conduct requiring a one-level increase in offense level under § 2K2.1(b)(1). We AFFIRM.

I

The evidence before the district court revealed the following course of events.

On the evening of August 16, 2001, La-Fleur's wife, Angela, informed him that she wanted a divorce. LaFleur became very upset, and the couple argued. La-Fleur then retrieved one of his guns, at which point Angela backed into a corner in the living room and sat down on the floor. LaFleur tried to put the gun into the frightened Angela's hand, telling her that a divorce would ruin his life and she might as well kill him, but Angela refused to take it. LaFleur next blocked Angela's exit from the house and removed the batteries from the telephone so that she could not summon help. When LaFleur retreated from the living room, Angela ran into the bedroom; she managed to escape through a bedroom window and called the police from a neighbor's house.

When the police arrived Angela told them that she and LaFleur had been arguing and that LaFleur had been threatening to commit suicide with a firearm. The police found LaFleur in the backyard sitting in a lawn chair, whereupon they arrested him and seized his locked gun case from the backyard area. The gun case contained an unloaded semi-automatic pistol and an unloaded semi-automatic rifle. The police also seized a blue tackle box containing ammunition. LaFleur admitted to the police that he had sold a third firearm to a coworker about a month before this incident.

LaFleur had been convicted on two prior occasions of burglarizing commercial establishments, for which he had been sentenced to six years' imprisonment. Presumably in light of that history, he chose in the present case to plead guilty to one count of possession of firearms by a felon. At his sentencing hearing LaFleur raised two objections to the PSR. First, he argued that he was eligible for a reduction in offense level under U.S.S.G. § 2K2.1(b)(2) because he possessed the firearms "solely for lawful sporting purposes." Second, he argued that he should not receive an increase in offense level under § 2K2.1(b)(1)(A) because his possession of a third firearm a month before his arrest was not conduct relevant to his § 922(g)(1) conviction.

LaFleur testified that he used the firearms solely for target shooting and presented affidavits from two of his friends to that effect. He denied that he attempted to prevent Angela from leaving the house on the night of August 16th, or that he threatened her with the gun during their altercation. The government stipulated that LaFleur possessed the firearms for lawful sporting purposes, that the guns were unloaded throughout LaFleur's argument with Angela, and that LaFleur did not unlawfully discharge the weapons. Moreover, both LaFleur and the government took the position that LaFleur's removal of one of his guns from its case during the domestic disturbance and his entreaties to his wife to shoot him did not preclude the court from granting LaFleur a reduction in offense level under § 2K2.1(b)(2). The court disagreed, commenting that "When he took that gun out of the case and started using it in connection with that domestic dispute, it seems to me that, arguably, from that moment forward he was guilty of unlawful use of the gun." The court further noted:

> I think this was an extremely dangerous situation. It's the kind of situation in which people end up dead, where you have domestic ... disputes, you have people acting very emotionally.... [Y]ou say the gun wasn't loaded at that time. Okay. I'm not sure it was necessarily not loaded. But in any event, there was no way that your wife could have known whether it was loaded or unloaded.... [A]t a certain point in this series of events, you tried to put the

gun in her hand, tell her to kill you. I mean, it doesn't get much worse than that. And that scenario could have ended up any number of ways that could have been tragic.

Ultimately, the court found that LaFleur had not possessed the firearms solely for target shooting because he used them "to attempt to intimidate or coerce his wife during an emotionally charged encounter during which she threatened to divorce him." Accordingly, the court refused to grant a sporting-purposes reduction.

The court further found by a preponderance of the evidence that LaFleur had owned a third firearm until a month before his arrest and that this was relevant conduct for the purposes of increasing LaFleur's offense level pursuant to § 2K2.1(b)(1)(A). As a result, the court adopted the recommendation of the probation officer and increased LaFleur's offense level by one.

## II

### A. The Sporting–Purposes Reduction

LaFleur first claims that he qualified for a reduction under § 2K2.1(b)(2) because he used his guns solely for target shooting. For purposes of applying § 2K2.1(b)(2), target shooting is a "lawful sporting purpose." *United States v. Lewitzke*, 176 F.3d 1022, 1028 (7th Cir.1999); *United States v. Bossinger*, 12 F.3d 28, 30 (3d Cir.1993). This court reviews for clear error a finding at sentencing that a defendant did not use firearms solely for lawful sporting purposes. *Lewitzke*, 176 F.3d at 1028. We review questions relating to the proper interpretation of the guidelines *de novo*. *United States v. Taylor*, 272 F.3d 980, 982 (7th Cir.2001).

■ LaFleur's argument appears to be of the latter type, in that he claims the district court applied too narrow an interpretation of § 2K.1(b)(2) to the facts of his case. He contends that the court read the guidelines as precluding a sporting-purposes reduction any time a person is not using his guns for a sporting purpose every minute of the time that he possesses the guns. He notes that at the sentencing hearing, the court commented that LaFleur "didn't take the gun out of the case to engage in target shooting" and that "unless he was acting in a way that was consistent with using the gun for target practice … any other conduct would be unlawful use of the gun." If the court's reading of the guideline were correct, La-Fleur maintains, a felon who engaged in target shooting would be ineligible for a sporting-purposes reduction any time he cleaned or stored his gun, or carried the gun to or from a sporting area. Such a literal reading cannot be correct as a matter of law because it would render meaningless the provision for a reduction for sporting purposes.

We think that LaFleur is overreading the district court's comment. The district court was merely following the rule that strict compliance with § 2K2.1(b)(2) must be demonstrated before the sporting-purposes reduction is appropriate. *See United States v. Gresso*, 24 F.3d 879, 881 (7th Cir.1994)("A firearm must have been acquired solely for sporting purposes or collection, *and* it must be possessed or used solely for sport or collection."); *see also United States v. Miller*, 224 F.3d 247, 252–53 (3d Cir.2000) (sporting-purposes reduction did not apply when defendant sold firearms because once he sold them he was no longer using them solely for lawful sporting purposes). No one contests that LaFleur acquired the firearms for sporting purposes. Nor did either the sentencing court or the government dispute that the weapons found in LaFleur's possession were of the type commonly used in target

shooting. *See Lewitzke,* 176 F.3d at 1028 (denying reduction where defendant claimed to have used weapons for target shooting but weapons were not of the type generally used for sporting purposes). Furthermore, LaFleur kept his guns and ammunition in separate, locked cases. *See id.* (denying reduction where guns and ammunition were found wrapped in towel in bathroom and underneath mattress).

The question is whether LaFleur used one of his firearms for something other than sporting purposes when he used it for the conduct at issue here. LaFleur was not trying to clean the gun or to move it from one case to another, and the court was not suggesting that the guideline adjustment would not be available in such a case. Rather, the court found that La-Fleur had used the gun to intimidate his wife during an altercation and that *this* use of the weapon was not consistent with sporting purposes.

LaFleur further argues that the court did not consider all of the factors dictated in the guidelines commentary to § 2K2.1(b)(2). A sentencing court must consider several factors when determining whether a reduction under § 2K2.1(b)(2) is warranted, including "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history ..., and the extent to which possession was restricted by local law." U.S.S.G. § 2K2.1, comment. (n.10); *Lewitzke,* 176 F.3d at 1028. LaFleur asserts that the court did not afford sufficient weight to the type of firearms and ammunition he used, as well as his practice of storing the unloaded guns in a locked case separately from the ammunition, all of which would have supported a conclusion that he used the guns for sporting purposes.

▮ LaFleur is not giving the district court proper credit, however. In addition to the factors he highlights, the commentary also requires the court to consider the "circumstances of possession and actual use" in deciding whether to grant the reduction. U.S.S.G. § 2K2.1, comment. (n.10). Here, the court acknowledged that the type of firearms and ammunition involved were consistent with target shooting, but it also noted that the "circumstances" surrounding LaFleur's use of the weapons included a domestic altercation. The police came to LaFleur's residence specifically because of his use of a firearm in a domestic disturbance. The court did not clearly err in characterizing this particular use of the gun as a "serious" and "dangerous" incident and thus as something disqualifying LaFleur from the reduction.

### B. Relevant Conduct

LaFleur also challenges the court's increase of his offense level based on his possession of a third firearm a month before his arrest. Section 2K2.1(b)(1) calls for a one-level increase in offense level if the offense involved three to four firearms. LaFleur argues that the court had insufficient evidence to find that he possessed three guns at the same time. Furthermore, LaFleur contends that the court improperly shifted the burden of proof by basing its sentencing decision on his failure to prove that he had not possessed the three guns simultaneously. As before, this court reviews the sentencing court's interpretation of the guidelines *de novo* and its finding of fact for clear error. *United States v. Santoro,* 159 F.3d 318, 320 (7th Cir.1998).

▮ A sentencing court uses U.S.S.G. § 1B1.3(a)(2), the relevant conduct section of the guidelines, to determine the number of firearms involved in an offense under U.S.S.G. § 2K2.1(b)(1). *Santoro,* 159 F.3d at 321. In *Santoro* this court found that

the "contemporaneous or nearly contemporaneous" possession of firearms over a relatively short period of time counted as relevant conduct for the purposes of an increase in offense level under § 2K2.1(b)(1). *Id.* The defendant in *Santoro* possessed a third firearm within six to nine months of his arrest for possession of two other weapons. *Id.* In this case LaFleur possessed a third firearm within a month of his arrest for possession of two other weapons. Under *Santoro,* this is enough to count as relevant conduct for the offense of conviction.

■ Sufficient evidence also existed for the court to conclude that LaFleur had possessed three firearms at the same time. *Santoro* does not require the court to find that the firearms were possessed literally simultaneously before the offense level increase dictated by § 2K2.1(b)(1) is proper; *Santoro* requires only that the defendant's possession of the three weapons be "contemporaneous or nearly contemporaneous." *Id.* But even if the court did need to determine that LaFleur possessed all three weapons at the same time, it needed to do so only by a preponderance of the evidence. *See United States v. Lindsey,* 30 F.3d 68, 70 (7th Cir.1994). LaFleur was in possession of two firearms at the time of his arrest. He admitted to police that he had previously owned a third firearm that he sold merely a month earlier. LaFleur presented no evidence that he had not acquired either of the two firearms police seized from his residence until after he sold the third firearm. Under the circumstances, the finding that he possessed all three firearms simultaneously was not clearly erroneous.

For these reasons, we AFFIRM the judgment of the district court.