UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 8, 2006
Decided August 15, 2006

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3989

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee,*<br><br>    *v.*<br><br>DERRICK A. BARBOUR,<br>    *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division<br><br>No. 2:03-CR-90<br><br>Philip P. Simon,<br>*Judge.* |

**O R D E R**

Derrick Barbour pleaded guilty to one count of possession of a firearm by a felon. *See* 18 U.S.C. § 922(g)(1). The district court concluded that his offense involved eight guns in addition to the two alleged in the count of conviction, and thus increased his offense level by four levels under U.S.S.G. § 2K2.1(b)(1)(B). Barbour appeals his sentence, arguing that his possession of those eight guns was not relevant conduct under § 2K2.1(b)(1)(B). Because the possession was an ongoing offense and not too remote to be counted as relevant conduct, we affirm.

## I.  Background

In February 2003 a police officer in Lake County, Indiana, stopped Barbour for speeding.  The officer, who believed that Barbour might be intoxicated, asked him to exit the vehicle.  When Barbour did so, the officer searched him and discovered a North American Arms .22-caliber revolver in his pocket.  Barbour was arrested for driving under the influence, and an inventory search of his vehicle uncovered a Ruger 9mm pistol.  Barbour had a 1996 felony conviction for assaulting a police officer, so federal authorities took over the investigation.  They soon discovered that Barbour had bought the North American Arms revolver and a Romanian-made SAR 1 rifle in the spring of 2002; he acquired both from a sporting goods store in Valparaiso, Indiana, by falsely denying his felon status.  Barbour was charged with one count each of making a false statement to a firearms dealer to acquire the SAR 1 rifle and North American Arms revolver, 18 U.S.C. § 922(a)(6).  He was also charged with one count of possessing the SAR 1 rifle as a felon, and a second possession count based on the .22 revolver and Ruger semiautomatic pistol found at the time of his arrest, *id*. § 922(g)(1).  Barbour pleaded guilty, without a written plea agreement, to the second possession count.

In the presentence report, the probation officer compiled information regarding various other firearms that Barbour possessed after his felony conviction.  From the Bureau of Alcohol, Tobacco, Firearms and Explosives, the probation officer acquired several firearms transactions records, or ATF Form 4473s.  These forms show that aside from the North American Arms .22 revolver and the SAR 1 rifle, Barbour also purchased two more .22-caliber revolvers from the sporting goods store in Valparaiso, one in 1999 and the other in 2002.  In an interview that took place before he was indicted, Barbour admitted to an ATF agent that he collected firearms and that his collection had been stolen in a 2002 burglary.  Based on that interview and the burglary report Barbour filed with the local police department, the probation officer identified the stolen guns as an AK-47 assault rifle, an SAR rifle, a .12-gauge shotgun, a .45-caliber pistol, a .40-caliber pistol, a .38-caliber pistol, two .22-caliber pistols, and two 9mm pistols.  The probation officer ensured that none of the guns were double-counted as relevant conduct by not tallying five guns that were of similar make or caliber to those described in the indictment.  These were the SAR rifle, the two .22-caliber pistols, and the two 9mm pistols.  The resulting count was ten guns that Barbour owned after his 1996 conviction; the .22 revolver and Ruger semiautomatic found in his car were included in the count of conviction, and the rest were counted as relevant conduct.

The probation officer calculated a base offense level of 20, and subtracted three levels for Barbour's acceptance of responsibility.  *See* U.S.S.G. § 3E1.1(a), (b).  This was offset by a four-level increase, however, reflecting the eight firearms Barbour possessed after his 1996 conviction that were not included in the count of

conviction.  *See* U.S.S.G. § 2K2.1(b)(1)(B) (adding four offense levels for offenses involving between eight and 24 firearms).  With a resulting offense level of 21 and a Category I criminal history, the probation officer calculated a guideline sentencing range of 37 to 46 months' incarceration.

At the sentencing hearing, Barbour made several objections to the PSR.  The only objection relevant to this appeal was his argument that the upward adjustment under § 2K2.1(b)(1)(B) was improper because his possession of the guns other than the two found in his car was too remote in time and non-criminal in character to be counted as relevant conduct.  The government asked the court to bear in mind that the burglary which cut off Barbour's possession of most of his guns took place just ten months before his arrest for the instant offense.  Moreover, the prosecution emphasized that Barbour had obtained the firearms by misrepresenting on a gun-permit application that he did not have a felony conviction.  With that permit, Barbour was able to purchase the firearms without a criminal-history check.  The sentencing court agreed, and rejected Barbour's objection.  The court did credit Barbour's testimony that he genuinely believed that his felony conviction had been expunged when his parole expired in 1996, and that he was not aware that it was a crime to own firearms.  The court therefore sentenced him to 21 months' incarceration, 16 months below the bottom of the guidelines range.

## II.  Analysis

Barbour's sole argument on appeal is that the district court erred by applying § 2K2.1(b)(1)(B).  The application of that provision is a factual finding that we review for clear error.  *See United States v. Birk*, 453 F.3d 893, 899 (7th Cir. 2006); *United States v. Szakacs*, 212 F.3d 344, 347 (7th Cir. 2000); *United States v. Strache*, 202 F.3d 980, 982 (7th Cir. 2000).

Barbour argues that his possession of the eight firearms in question was cut off by their theft in April 2002, ten months before his arrest in February 2003.  Relying on *United States v. Santoro*, 159 F.3d 318, 321 (7th Cir. 1998), he characterizes this ten-month gap as too great to make his possession of those guns the same course of conduct as his possession of the .22 revolver and Ruger pistol in the car.  In *Santoro*, we held that weapons possessed within six to nine months of the conduct underlying a violation of § 922(g)(1) are countable as relevant conduct under § 2K2.1(b)(1).  *Id.* at 321.  *See also United States v. Windle*, 74 F.3d 997, 1000-01 (10th Cir. 1996) (counting possession within a "four to five month period" as relevant conduct); *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995) (counting contemporaneous possession).  Barbour contends both that ten months is too long a gap under *Santoro*, and that the burglary cut off the ongoing course of conduct.  He also points out that some of the weapons, such as the SAR 1 rifle, were

*purchased* more than a year before his arrest, but this is an irrelevant consideration. "Possession of a firearm is a continuing offense which ceases only when the possession stops." *See United States v. Fleischli*, 305 F.3d 643, 658 (7th Cir. 2002). And we note that Barbour's possession only stopped when his guns were stolen. There is no reason to believe that barring that theft, he would not have voluntarily continued that possession into the nine-month period we found reasonable in *Santoro*.

As for the actual ten-month period at issue here, there is no support for his suggestion that it was clear error for the district court to count firearms possessed within that time frame. *Santoro* did not set a nine-month ceiling; it merely holds that nine months is a "relatively short period of time," and other guns possessed in that proximity to the offense of conviction are part of the same course of conduct. *Santoro*, 159 F.3d at 321. The district court here applied the same reasoning to firearms that had been in Barbour's possession ten months before his arrest, and that approach was not clearly erroneous. And the district court was careful to point out the similarities in Barbour's possession of the weapons named in the count of conviction and the weapons reported stolen; most were handguns, most were purchased within the same 12-month period, and all were obtained using the same fraudulent Indiana gun permit. Given the temporal proximity of Barbour's stolen gun collection and the pistols in his car when he was arrested, it was not clear error for the district court to apply § 2K2.1(b)(1)(B).

Barbour also argues that, because he owned the firearms "for personal protection and as a collector," his possession of the other eight guns "was not a criminal course of conduct." This is a frivolous argument. Barbour's felony conviction makes the mere possession of the weapons a crime regardless of his intentions or his belief that his conviction had been expunged. All that Barbour had to know was that the objects in his possession were guns; what he intended to do with them and whether he thought he was entitled to own them are not relevant considerations. *See United States v. Lane*, 267 F.3d 715, 719 (7th Cir. 2001) (felon's temporary possession and purchase of a firearm for another person's lawful sporting use violated § 922(g)). His motives and subjective beliefs about the legality of his gun ownership were taken into account by the district court, which gave him a sentence 16 months below the bottom of the guidelines range in consideration of these very factors.

AFFIRMED.