In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1881

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL LEPAGE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05 CR 147—**John C. Shabaz**, *Judge.*

ARGUED OCTOBER 30, 2006—DECIDED FEBRUARY 15, 2007

Before KANNE, ROVNER, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.*  The appellant entered a conditional guilty plea to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 120 months' imprisonment. On appeal he challenges the district court's denial of his motion to suppress the firearm and he challenges his sentence. We affirm.

## I. HISTORY

On August 23, 2005, police in Superior, Wisconsin, received a phone call from a girl who reported a group of

people acting suspiciously outside the building that she was in, apparently prowling around a car and a nearby building that she thought was supposed to be empty. Relaying information from others in the house, she continued to update the police about the activities of the group of people, she named one of the suspicious people as Michael LePage, and she whispered that he had a gun. She identified herself by name to the dispatch operator.

When officers arrived, they found a group of three people at the location. By this time the police officers at the scene had been informed by dispatch that Michael LePage was one of the group and was reported to be armed. An officer, who knew LePage by sight and also knew him to be a prior felon, saw him on the porch of a house carrying a duffel bag. He ordered LePage to drop the bag and move to the sidewalk, and then frisked him. When LePage dropped the bag, the officer had heard a "thump" as it hit the porch. Finding nothing on LePage's person, the officer walked to the porch and looked at the bag. The officer's report states that the bag was half-opened and he could see part of a sawed-off shotgun. LePage was then arrested.

LePage moved to suppress the admission of the shotgun as the fruit of an improper search and seizure. The magistrate recommended that the district court deny the motion to suppress, and the district court adopted that recommendation. LePage then pled guilty, reserving the right to appeal the admission of the shotgun.

At sentencing, the district court enhanced the sentence for conduct that involved more than two firearms and for possessing the firearm in connection with another felony. LePage appeals the sentence on the grounds that those enhancements were incorrectly applied. He also challenges the sentence as unreasonable.

## II. ANALYSIS

### A. *Suppression of the Sawed-Off Shotgun*

LePage argues that the detention, search, and seizure were made in violation of his Fourth Amendment rights and that the district court should have suppressed the shotgun. We disagree.

When reviewing a decision on a motion to suppress, district court determinations of reasonableness are reviewed *de novo*. *United States v. Scheets*, 188 F.3d 829, 836 (7th Cir. 1999). LePage first argues that the police did not have reasonable suspicion to stop him when they arrived on the scene on August 23. Police officers may briefly stop and detain somebody for investigation if they have a reasonable suspicion that the suspect has committed a crime or is about to do so. *Terry v. Ohio*, 392 U.S. 1 (1968). This reasonable suspicion need not rise to the level of probable cause, but it must be more than a mere hunch. *United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003). A *Terry* stop must not only be valid at its inception, but the officers must not exceed the scope or nature of the stop. *United States v. Askew*, 403 F.3d 496, 508 (7th Cir. 2005). Although a single anonymous tip seldom has the indicia of reliability to support a finding of reasonable suspicion for a *Terry* stop, a tip from a named informant that can be corroborated might support such a stop. *Florida v. J.L.*, 529 U.S. 266, 271 (2000). When a single informant provides the tip that brought police to a *Terry* stop, this court looks to the amount of information given, the degree of reliability, and the extent that the officers can corroborate some of the informant's information. *Ganser*, 315 F.3d at 843.

In this case, the informant gave her name and location to the police. She also described a group of people repeatedly walking in circles around a building that she thought was empty—behavior that was very similar to the behavior

that gave the police officer reasonable suspicion in the original *Terry* case. *Terry*, 392 U.S. at 5-6. She described what she thought was an attempt to break into a car next to that building. Most significantly, she said that although she had not seen a gun, she believed that LePage was armed because he was carrying something in front of himself.

When the police arrived, they were able to corroborate some of this information. There was a group of people in the area, although it was a smaller group than the caller had reported. Michael LePage was in fact a member of the group and the small group was walking from a car toward the house that the caller had said they had been circling. This is not a case where a single anonymous caller told the police that some unnamed person at the location had a gun and then hung up. The officers who arrived at the scene had received corroborated information from a caller who was willing to give her name to the police and they had reasonable suspicion to believe that one of two crimes was in progress. They could have reasonably suspected that the group was involved in casing or prowling the cars and buildings, or, given that the officers knew LePage's criminal history, they could also have reasonably suspected that he was a felon in possession of a firearm. At its inception the decisions to stop LePage, to ask him to step from the porch to the sidewalk, and to briefly detain him were supported by a reasonable, particularized suspicion that one or more crimes were being committed and that LePage was armed.

LePage then argues that, even if the initial stop was valid, the subsequent actions of the police by looking into the duffel bag on the porch were unreasonable in scope. We disagree. The officers had arrived to find LePage exactly where the caller had said he would be. When ordered to drop the bag, the officers heard a sound, described as a thump, that was consistent with a weapon

being in the bag. *See United States v. Quinn*, 83 F.3d 917, 921-22 (7th Cir. 1993) (finding reasonable suspicion to pat down a jacket when it made a thudding sound, consistent with a weapon, upon bumping into a car). Officers may walk up to that part of private property that is open to visitors or delivery people. *United States v. French*, 291 F.3d 945, 953 (7th Cir. 2002). The officers did that, and saw a sawed-off shotgun in LePage's partially-opened duffel bag. At that point they had probable cause to arrest LePage and did so. The decision by the district court not to suppress the shotgun as evidence was correct.

*B. The Sentence*

LePage also challenges his sentence. The district court started with a base offense level of 20 under Sentencing Guidelines § 2K2.1(a)(4)(B). The court added two levels under Guidelines § 2K2.1(b)(1)(a) because the offense involved three or more firearms and two levels under § 2K2.1(b)(4) because the firearms were stolen. The court added an additional four levels for possessing the firearms in connection with another felony under Guidelines § 2K2.1(b)(6).[1] The court subtracted three levels for acceptance of responsibility, arriving at an offense level of 25. With a criminal history category of VI, the advisory range was 110-137 months. The court then considered the necessary factors under 18 U.S.C. § 3553(a) and sentenced LePage to the statutory maximum of 120 months' imprisonment.

LePage argues that two of the sentencing enhancements were incorrect and that the sentence as a whole is unrea-

---

[1] At the time of sentencing, the enhancement for possession "in connection with another felony offense" was contained in § 2K2.1(b)(5) of the 2005 Sentencing Guidelines. It has since been relocated to § 2K2.1(b)(6).

sonable. Although he does not dispute that the firearms were stolen, he argues that there was not enough evidence to support finding that the gun was used in connection with another felony. He also argues that the district court should not have enhanced the sentence for a quantity of firearms greater than two because only two were found that night. Finally, LePage argues that by sentencing him to the statutory maximum, the district court unreasonably deprived him of the benefit of having cooperated with the prosecution.

When the police arrested LePage they searched his duffel bag and his girlfriend's car. In the car they found methamphetamine packaged for sale. In his bag they found a large amount of a chemical used to cut methamphetamine. Earlier in the summer, LePage had sold methamphetamine to a confidential informant. The district court concluded that these facts were sufficient to support the conclusion that the sawed-off shotgun was being possessed in connection with the felony of drug trafficking.

In order to enhance the sentence for possessing the gun in connection with another felony, the court must find that the gun had some purpose or effect in relation to that second crime. *United States v. Haynes*, 179 F.3d 1045, 1047 (7th Cir. 1999). Mere contemporaneous possession while another felony is being committed is not necessarily sufficient, and possessing a gun while engaged in the casual use of drugs might not give rise to the inference that the gun was possessed in connection with the drugs. *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir. 1996). But when the guns are possessed along with the materials of a drug trafficker, it is a reasonable inference that the guns protect or embolden the criminal enterprise. *Id.* at 247-48. LePage argues that the other evidence before the district court did not support a finding that the sawed-off shotgun had some purpose or effect in relation to the drug possession.

That argument might be sound if the evidence did not support the inference that LePage is a dealer or trafficker in methamphetamine. He was carrying several pounds of an agent used to dilute methamphetamine. This is consistent with being a dealer and not simply a casual user of the drug. He sold methamphetamine to a confidential informant earlier in the summer of 2005, which is also consistent with an inference that he is a trafficker. The drugs in the car were apparently packaged for resale. The district court also noted that (unlike the marijuana in his possession) there was no accompanying paraphernalia associated with the use of methamphetamine. And, perhaps most damning, the sawed-off shotgun was in the duffle bag that contained the cutting agent.

LePage argues that the dollar value of the drug trafficking materials found in his bag is so small that it is illogical to believe that his sawed-off shotgun was possessed for protection. But this argument is a non-starter because in *Wyatt* we upheld the "in connection with" enhancement when the guns were found near plastic baggies and drug transaction ledgers—items with even less material value than the amphetamines and cutting agent that LePage was carrying. *Wyatt*, 102 F.3d at 243. Given the totality of the information before the district court, the facts and the inferences to be drawn from them support the district court's conclusion that the shotgun was being used in connection with another felony, the trafficking and dealing of methamphetamine. The application of the enhancement was correct.

We turn to the question of how many guns should have been included in the relevant conduct. In addition to the drugs, when the police searched the car they also found another weapon. Both of the weapons were stolen in a home invasion several days prior to LePage's arrest. LePage took part in that home invasion by driving the getaway car. During that home invasion, five firearms

were stolen and LePage was eventually given his choice of which of the firearms he would keep as his share of the proceeds. LePage admits all of this. The district court enhanced the offense level because the conduct involved five, rather than two, firearms.

When determining relevant conduct under the Sentencing Guidelines, specific offense characteristics:

> shall be determined on the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant, and . . . in the case of a jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

Sentencing Guidelines § 1B1.3(a).

The district court found by a preponderance of the evidence that all five guns were relevant for sentencing. At the sentencing hearing, the government argued that "[h]e had access to the firearms. By his own admissions . . . all the guns were in this basement. He could have exercised dominion and control over them." Sent. Tr. at 7. On its face, this argument seems to hurt the government's case, not help it. Access is not synonymous with possession, nor with either dominion or control. And arguing that LePage "could have" exercised dominion and control does not establish that he *did* exercise dominion and control. In fact, the admissions that LePage made (that he was only allowed to pick two firearms out of the five) indicate that he did *not* have dominion and control over the other three weapons. By this logic, a felon who stole one gun from a display case in a pawn shop could be sentenced for having possessed every gun in the store: he "could have" exercised dominion and control over any one of them, therefore he possessed all of them. This is, of course, illogical.

Nevertheless, the government also argued that the other three firearms were relevant because they were part of the same course of conduct and a common scheme or plan under *United States v. Santoro*, 159 F.3d 318 (7th Cir 1998). *Santoro* is not directly on point with this case: the defendant in *Santoro* did not dispute that he had possessed the second firearm, but rather was challenging whether that possession was too remote in time to be considered relevant conduct for a later conviction. But the parties and the district court are correct that *Santoro* does stand for the proposition that the court must look to § 1B1.3 and therefore that events in the same course of conduct or a common scheme or plan can be included in determining the number of firearms.

Here the defendant took an active role in a conspiracy to steal five firearms by driving the getaway car. In fact, he thought that he was helping to steal fifteen firearms until the police and the victim of his home invasion informed him that he and his accomplices had only managed to abscond with five. LePage therefore aided and abetted acts involving five firearms. By analogy, the application notes clarify that in cases involving contraband a defendant is responsible not only for that in which he is "directly involved" but also "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." Guidelines § 1B1.3 app. n.2. The subsequent commentary makes it even more clear: when defendant A is one of ten people hired to offload one ton of contraband from a ship, all ten defendants are jointly responsible for the entire quantity—even that fraction that they never personally touched. *Id.* Even if LePage never exercised exclusive possession of all five firearms, his participation in the joint criminal endeavor makes that total quantity relevant for sentencing. *Accord United States v. Wallace*, 461 F.3d 15 (1st Cir. 2006) (counting all six firearms stolen

from a firearms store in addition to the two firearms brandished by the defendants).

Finally, LePage argues that by sentencing him to the statutory maximum the district court imposed an unreasonable sentence because he was deprived the benefit of having cooperated. After correctly determining the offense level and the defendant's criminal history, the district court entertained argument from both parties about the other factors necessary under 18 U.S.C. § 3553(a). The advisory range was 110 to 137 months, capped by a statutory maximum of 120 months. LePage argued that a sentence of 120 months would give no effect to the fact that he had cooperated with the prosecution and accepted responsibility. That is, even if he had put the government to its burden of proof, he could not have been any worse off than a sentence of 120 months. The district court was not persuaded, and sentenced LePage to 120 months. LePage repeats the argument here on appeal.

A sentence within the correctly computed advisory guidelines is now accorded a rebuttable presumption of reasonableness on appeal. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). LePage argues that the district court did not acknowledge his acceptance of responsibility and should have granted him "tangible credit" for it. This is incorrect. The court did address his argument, but dismissed it: "He's already received the benefit of the reduction which he perhaps seeks from this Court based on the manner in which he was charged." Sent. Tr. at 15. In fact, the district court thoroughly discussed many other § 3553(a) factors that weighed in favor of a higher sentence, and indicated that the statutory maximum significantly limited his ability to impose the sentence that he believed was necessary. Sent Tr. at 15 (indicating that "130 to 162" months would be more appropriate).

LePage was not denied the benefits of cooperating with the authorities: he simply received a far *greater* benefit by nature of the operation of the statutory limit. This was offset, in the judgment of the district court, by numerous factors that counseled a higher sentence. LePage dedicated a mere sentence fragment to the undeveloped argument that his "history of drug abuse and psychological difficulties" also made the sentence unreasonable. Without any more substance than this, it appears that his only serious argument is that his cooperation is going un-rewarded. We are not prepared to establish a new rule that a sentence is *per se* unreasonable whenever a defendant is sentenced at the statutory maximum after cooperating and accepting responsibility. This would be the practical effect of accepting LePage's argument, and we therefore reject it.

### III. CONCLUSION

For the foregoing reasons, the judgment and sentence of the district court are AFFIRMED.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
