In the

# United States Court of Appeals

### For the Seventh Circuit

No. 21-1945

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RODNEY BURNETT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cr-530 — **John Z. Lee**, *Judge.*

ARGUED APRIL 27, 2022 — DECIDED JUNE 21, 2022

Before SYKES, *Chief Judge*, and BRENNAN, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge.* Rodney Burnett appeals his 110-month sentence for unlawfully possessing ammunition as a convicted felon. In computing the advisory Sentencing Guidelines range, the district court applied the relevant conduct rule and imposed a two-level enhancement based on its finding that Burnett's offense conduct involved three firearms. Burnett challenges that finding on appeal. We affirm, as

the sentencing record supported the district court's application of the enhancement.

## I

In May 2018, in the Garfield Park neighborhood of Chicago, passengers in an older-model grey or dark-colored Honda Civic shot two people. Eyewitnesses also reported that one of the shooters wore black clothing and a surgical mask—a noteworthy fact, before COVID-19 made mask-wearing common. Shell casings recovered from the scene showed that two guns had been fired.

About 25 minutes after the shooting, police spotted a car in the same general area matching the description provided by the eyewitnesses to the shooting. When the police approached, the car sped away. A brief chase ensued and ended with the Honda Civic crashing into another car and bursting into flames. Three men, including Rodney Burnett, then got out and ran. At least one of the fleeing passengers carried a gun.

Police pursued two of the men on foot down a nearby alleyway. They caught up to Burnett, who was wearing a blue hoodie and black pants and a surgical mask around his neck, and in a search incident to arrest, found two different brands of ammunition in his pockets. The ammunition matched that found in the two loaded guns tossed during the foot chase. Police later determined that two of the recovered guns (one in the alley where police arrested Burnett and a second from the backseat of the burned-out Honda) were fired during the shooting.

Burnett pleaded guilty to illegal possession of ammunition based on his prior felony conviction. See 18 U.S.C.

§ 922(g)(1). At sentencing hearings, the district court saw body-camera footage and heard testimony from officers involved in the chase and Burnett's arrest. Based on that evidence—and over Burnett's objection—the court found that three guns were involved in the underlying offense and therefore applied a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A). The district court reasoned that, even if Burnett did not personally possess the three guns, all three were attributable to him as relevant conduct under U.S.S.G. § 1B1.3 because the guns were used as part of a joint criminal activity (the shooting) and Burnett had aided and abetted the other Honda passengers in possessing them.

The district court explained its finding this way:

> [A]ll three [men] were in the Honda Civic within 25 minutes of the shooting and in a nearby area; Burnett and [an associate] each had face masks when arrested … Burnett had ammunition that matched … shell casings found at the site of the shooting; and a 9-millimeter handgun was found in the Honda that matched the … shell casings found at the site of the shooting.
>
> Given that [two guns] … were both tied to the … casings [found at the shooting], they both fall within the scope of relevant conduct under § 1B1.3(a)(1) and (2). And, while there may be no evidence that the [third] gun was discharged during the shooting, the Court finds that it is more likely than not that Burnett or one of his associates possessed the gun as part of their plan to carry it out. Thus, the Court finds that

the government has satisfied its burden to prove
that the 2-level enhancement § 2K2.1(b)(1)(A)
applies.

With the enhancement, Burnett's total offense level
reached 25. And with his category V criminal history, the
Guidelines yielded an advisory range of 100 to 125 months'
imprisonment. The district court sentenced Burnett to 110
months.

Burnett now appeals.

## II

Burnett renews his challenge to the application of the two-
level enhancement under U.S.S.G. § 2K2.1(b)(1)(A). He con-
cedes that he participated in the shooting, but maintains that,
because only two guns were fired, the district court's applica-
tion of the three-gun enhancement was error.

## A

At sentencing a district court may take a defendant's of-
fense conduct—often narrowly defined, such as Burnett's un-
lawful possession of ammunition here—and put that conduct
in context by considering the broader sequence of events lead-
ing up to, and following, the particular unlawful act at the
heart of the defendant's conviction. Doing so allows the court
to ensure that the defendant's sentence reflects a more com-
plete picture of his illegal behavior, rather than a narrower
and incomplete snapshot of a criminal act. The Sentencing
Guidelines capture this approach through the so-called rele-
vant conduct rule, which provides district courts direction as
to the scope of conduct appropriate for consideration at sen-
tencing. See U.S.S.G. § 1B1.3; see also *United States v. Ritsema*,
31 F.3d 559, 565 (7th Cir. 1994) ("The Relevant Conduct

provision is seen as one of the guidelines' main vehicles for introducing real-offense principles into what is predominantly a charge-offense sentencing system.").

For purposes of determining a defendant's base offense level, the Sentencing Guidelines group together offenses for unlawful possession of ammunition and unlawful possession of firearms. See U.S.S.G. § 2K2.1. And, whether the offense of conviction is for possession of ammunition or firearms, § 2K2.1(b)(1) instructs district courts to increase a defendant's offense level if "the offense involved three or more firearms."

To determine which guns, if any, should be considered "involved in" the defendant's offense, sentencing courts apply the definition of "relevant conduct" in U.S.S.G. § 1B1.3. See *United States v. LePage*, 477 F.3d 485, 490–91 (7th Cir. 2007). Read together, these provisions—§ 2K2.1 and § 1B1.3— instruct a district court to apply the two-level enhancement if three firearms were involved in "the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). This standard is satisfied, the Sentencing Commission has explained, if the guns were used as part of a joint criminal activity, furthered that activity, and their use was reasonably foreseeable. See *id.* § 1B1.3(a)(2) & cmt. n.3. Alternatively, the enhancement applies if the defendant aided and abetted others' use of the guns. See *id.* § 1B1.3(a)(1)(A).

We review a district court's interpretation of the sentencing guidelines de novo. See *United States v. Miller*, 883 F.3d 998, 1004 (7th Cir. 2018). But we review a district court's factual finding regarding the number of guns "involved in" an offense for purposes of § 2K2.1(b)(1) only for clear error. See *United States v. Ghiassi*, 729 F.3d 690, 695 (7th Cir. 2013). A

district court's factual findings under § 1B1.3 must be supported by a preponderance of the evidence. We will not second guess those factual findings unless, after reviewing the record, we are left with the definite and firm conviction that a mistake has been made. See *United States v. Baines*, 777 F.3d 959, 963 (7th Cir. 2015).

B

Having taken our own fresh look at the sentencing transcript, we see no errors—legal or factual. The court applied the precise legal framework we have described and, in doing so, did not clearly err in applying a two-level sentencing enhancement under § 2K2.1. The district court reasonably found by a preponderance of the evidence that Burnett participated in joint criminal activity—the shooting—and that the use of all three guns fell within the scope of that activity, furthered it, and was foreseeable to him. See U.S.S.G. § 1B1.3 cmt. n.3.

The totality of the evidence before the district court adequately supported its factual finding that Burnett and the other Honda passengers were involved in a joint criminal undertaking. Indeed, Burnett concedes on appeal that he was involved in the shooting—an acknowledgement finding ample support in the factual record:

- Burnett's clothing sufficiently matched the eyewitnesses' description of one of the shooters;

- Burnett fled from the Honda Civic involved in the shooting;

- Burnett was carrying ammunition for one of the guns used in the shooting; and

- The third gun abandoned in the Honda matched shell casings found at the scene of the shooting.

The record also supports an inference that Burnett and his companions planned the shooting and carried it out together. During and after the shooting, Burnett and his associate wore masks—which, in a pre-COVID world, the judge could reasonably interpret as reflecting planned, deliberate joint action— and the trio then fled together in a single car.

Burnett offers several responses, but each falls short. First, he insists that the shooting was unplanned. But the district court was not required to credit Burnett's version of events. See *Ghiassi*, 729 F.3d at 696–97. His competing narrative did not negate the significant circumstantial evidence supporting the district court's finding of a joint and foreseeable plan. Second, Burnett urges that, because the government lacked evidence that the second gun discarded in the alley was fired in the shooting, the district court had no basis for concluding that it was involved. Recall, though, that the evidence showed that Burnett was carrying ammo for that very gun as well, and that it was discarded while Burnett and his companion fled down the alley after the shooting. So the district court could permissibly infer that, even if not fired, the gun was still involved in the broader events around the shooting. The relevant conduct rule requires no more.

At bottom, Burnett attempts to hold the sentencing court to too high of a standard. On this factual record, we will not disturb the district court's finding that three guns were "involved in" Burnett's unlawful possession of ammunition offense.

Because the provisions regarding joint activity and "aid-
ing and abetting" are alternative bases for applying a two-
level sentencing enhancement under § 2K2.1, we need not
reach Burnett's challenge to the district court's finding that he
aided and abetted his associates' possession of the three guns.
See U.S.S.G. § 1B1.3 cmt. n.2. Nonetheless, the district court's
factual finding was sound. Burnett contends that under *Rose-
mond v. United States*, his mere presence at the scene of the
shooting is insufficient for aider and abettor liability. See 572
U.S. 65, 71 (2014) (explaining that aiding and abetting liability
requires a showing of intent). We see the facts another way.
Even if the district court did not fully articulate its basis for
finding that Burnett intended to aid his associates, it could
have reasonably inferred Burnett's intent from his continued
participation in the crime during and after the shooting.
See *id.* at 78 n.9.

In short, the district court did not clearly err in finding that
Burnett's relevant conduct involved three guns that were part
of the planned, joint activity of the shooting, and thus war-
ranted a two-level enhancement under U.S.S.G. § 2K2.1.

For these reasons, we AFFIRM.