In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-3070

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERTO PRIETO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-CR-00452(1) — **Harry D. Leinenweber**, *Judge.*

ARGUED OCTOBER 3, 2023 — DECIDED OCTOBER 23, 2023

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges.*

PER CURIAM. Roberto Prieto appeals his 120-month sentence for unlawfully possessing firearms. In computing the advisory Sentencing Guidelines range, the district court imposed two four-level enhancements: one for trafficking firearms to a person whose possession of which Prieto knew or had reason to believe would be unlawful, and another because his offense conduct involved eight firearms. Because the

sentencing record supports the district court's application of the enhancements, we affirm.

## I. Background

Prieto, a convicted felon, sold firearms. During 2020 and 2021, Prieto arranged several firearms transactions to a confidential source. Some transactions resulted in completed sales; others did not.

The first transaction resulted in a completed sale, which involved a shotgun and occurred on June 27, 2020. During this transaction, the confidential source informed Prieto that he was on parole and even suggested that he had outstanding warrants.

The second transaction, however, did not result in a sale. On July 18, 2020, Prieto texted the confidential source a picture of a Rugar pistol and offered to sell it for $800. In the meantime, Prieto was arrested for a parole violation; thus, no sale took place. Prieto remained incarcerated until May 2021.

After his release from prison, Prieto reinitiated contact with the confidential source. On July 6, 2021, Prieto texted the confidential source a picture of two Glock pistols, which he offered to sell for $2,200. This sale, however, also did not happen because the pistols were transferred to someone else.

About a week later, Prieto sold two firearms to the confidential source. And the following day, Prieto sold two more firearms to the confidential source, who was accompanied by an undercover agent. After the sale, law enforcement arrested Prieto.

Prieto pleaded guilty to three counts of unlawfully possessing a firearm as a felon in violation of 19 U.S.C. § 922(g)(1).

The probation office prepared a presentence investigation report ("PSR") that recommended applying two four-level enhancements to Prieto's base offense level. According to the PSR, the first enhancement, U.S.S.G. § 2K2.1(b)(5), regarding "trafficking" firearms, applied because Prieto transferred two or more firearms to the confidential source and knew or had reason to believe the confidential source was an individual whose possession of the firearms would be unlawful. And the second enhancement, U.S.S.G. § 2K2.1(b)(1)(B), regarding relevant conduct, applied because Prieto's conduct involved eight firearms. The PSR also applied a two-level enhancement for obstruction-of-justice. With these enhancements, the PSR calculated Prieto's total offense level at 29 and his criminal history category at V, yielding a guidelines range of 140 to 175 months' imprisonment.

At sentencing, Prieto contested the application of each enhancement. Regarding the firearms-trafficking enhancement under § 2K2.1(b)(5), Prieto argued the government did not prove that the confidential source actually was on parole, or that he, Prieto, had reason to believe the source remained on parole when he transferred multiple guns to the source in July 2021. As for the enhancement under § 2K2.1(b)(1)(B), Prieto argued that he should not be held accountable for eight firearms because—for three of them—he merely offered (but failed) to sell them to the confidential source.

The district court rejected Prieto's arguments regarding the four-level enhancements. It concluded that the record supported the enhancement for trafficking firearms because Prieto believed that he was transferring firearms to a person on parole. The court then found that Prieto's conduct involved eight firearms, deeming it "sufficient that he

indicate[d] that he has or will have possession of the specific number of weapons." (The court sustained Prieto's objection to the two-level enhancement for obstruction-of-justice.) Consequently, the court determined that Prieto had a total offense level of 27 and a criminal history category of V, resulting in a guidelines range of 120–150 months. Ultimately, the court sentenced Prieto to 120 months in prison.

## II. Analysis

On appeal, Prieto renews his challenges to the application of the four-level enhancements under §§ 2K2.1(b)(5) and 2K2.1(b)(1)(B). We review de novo the district court's application of the guidelines range calculation. *United States v. Porraz*, 943 F.3d 1099, 1102 (7th Cir. 2019). We review for clear error the district court's factual determinations underlying the application of the Guidelines—specifically, the factual determination at issue here regarding the number of firearms involved in an offense. *United States v. Burnett*, 37 F.4th 1235, 1239 (7th Cir. 2022). A district court need find only, by a preponderance of the evidence, that the facts are sufficient to support an enhancement. *United States v. Griffin*, 76 F.4th 724, 751 (7th Cir. 2023).

"When interpreting a specific provision of the sentencing guidelines, we 'begin with the text of the provision and the plain meaning of the words in the text.'" *United States v. Cook*, 850 F.3d 328, 332 (7th Cir. 2017) (quoting *United States v. Hill*, 645 F.3d 900, 907–08 (7th Cir. 2011)).

### A. Firearms Trafficking

Prieto contends that the district court erred in applying the sentencing enhancement under § 2K2.1(b)(5), which provides a four-level increase to the offense level "[i]f the defendant

engaged in the trafficking of firearms." Application Note 13(A) to § 2K2.1(b)(5) clarifies that the firearms-trafficking enhancement applies if the defendant:

 (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

 (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

  (I) whose possession or receipt of the firearm would be unlawful; or

  (II) who intended to use or dispose of the firearm unlawfully.

Application Note 13(B) further states:

"Individual whose possession or receipt of the firearm would be unlawful" means an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Prieto first argues that the government had to prove by a preponderance of the evidence that the confidential source actually was on parole at the time. He relies on the Tenth Circuit's opinion in *United States v. Francis*, 891 F.3d 888, 896–98 (10th Cir. 2018). Given the "reason to believe" language in the application note, however, we agree with the government that the confidential source need not actually be a prohibited person. *See, e.g., United States v. Henry*, 819 F.3d 856, 870 (6th Cir. 2016) ("[T]he agent need not have *actually* been a felon for §2K2.1(b)(5) to apply. The Guidelines merely require [the defendant] to have 'had reason to believe' that [the transferee's] 'possession or receipt of the firearm would be unlawful.'"); *United States v. Fields*, 608 Fed. App'x 806, 813 (11th Cir. 2015) (holding that the guidelines only require that the defendant had reason to believe that the transferee could not possess firearms lawfully).

Prieto next maintains that he did not know or have reason to believe that the confidential source was on parole during the sale of multiple firearms. Prieto concedes he knew that the confidential source was on parole during the firearm sale in June 2020 but denies having reason to believe that the confidential source remained on parole during the sales in July 2021, especially because the confidential source said nothing further at the time about still being on parole. Thus, Prieto contends, the district court erred in applying the firearms-trafficking enhancement.

The record evidence here is sufficient to show that Prieto "had reason to believe" the confidential source remained on parole during the firearm sales in July 2021. Although the confidential source did not reiterate his status as a parolee, nothing in the record suggests that the source's status may have

changed during the 13 months between the first and second firearm sales. Indeed, each sale occurred in the same manner: Prieto arranged cash transactions in exchange for firearms after texting about the transaction. And Prieto would have known from his own firsthand experience with the criminal justice system that terms of parole can span years. On these facts, the district court did not err in applying the firearms-trafficking enhancement under U.S.S.G. § 2K2.1(b)(5).

**B. Number of Weapons**

Prieto next argues that the district court erred in determining, for purposes of § 2K2.1(b)(1), that he trafficked eight firearms instead of five. Section 2K2.1(b)(1) of the Sentencing Guidelines provides incremental increases to a defendant's offense level based on the number of firearms associated with his crimes of conviction (i.e., the higher the quantity of firearms, the greater the offense level). As relevant here, § 2K2.1(b)(1) directs district courts to increase by four levels the offense level of a defendant convicted of unlawful possession of a firearm if the offense involved 8 to 24 firearms. But if the offense involved 3 to 7 firearms, the offense level only increases by two levels.

Prieto concedes that his offenses involved five firearms but argues that the government failed to produce sufficient evidence to support a finding that eight firearms were involved in his offenses. Specifically, he contends that the government failed to prove he unlawfully sought to obtain the three firearms that he offered (but failed) to sell to the confidential source.

In determining the number of firearms, the court may consider all firearms that were "involved in the same course of conduct or common scheme or plan as the offense of conviction." *United States v. Burnett*, 37 F.4th 1235, 1238–39 (7th Cir. 2022). Application Note 5 to Subsection (b)(1) specifies that "only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed" should be counted for purposes of this Guideline.

Here, sufficient evidence in the record supports the finding that Prieto's offenses included the three firearms that he offered (but failed) to sell to the confidential source. Prieto sold the confidential source a firearm in June 2020. Prior to that first sale, he texted the confidential source and sent pictures of the firearm. Each firearm sale occurred in the same manner: Prieto sent pictures of the firearms to the confidential source and arranged a meeting to complete the sale. Prieto engaged in this same course of conduct for the three firearms that he ultimately did not sell to the confidential source. The sales of the three firearms were not completed because of two reasons: (1) Prieto was arrested before the sale of one of the firearms was completed; (2) despite offering to sell two firearms to the confidential source, those firearms were transferred to someone else. The evidence is more than sufficient to infer Prieto sought to obtain these three firearms. On these facts, the district court did not err in applying § 2K2.1(b)(1). *See United States v. Birk*, 453 F.3d 893, 900 (7th Cir. 2006) ("While the Guidelines caution against speculative findings, they also emphasize the need to consider intended conduct as well as completed conduct." (quotation omitted)).

### III. Conclusion

For these reasons, we affirm Prieto's sentence.