In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3967

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEPHEN WALTOWER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 cr 186—**David H. Coar**, *Judge.*

ARGUED FEBRUARY 16, 2011—DECIDED JULY 5, 2011

Before POSNER, FLAUM and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* Stephen Waltower was con-
victed of being a felon in possession of a firearm, in
violation of 18 U.S.C. § 922(g)(1). He was acquitted of
several other drug-related offenses, but the district
court took the underlying (acquitted) conduct into con-
sideration at sentencing. The result was a statutory maxi-
mum sentence of 120 months. On appeal, Waltower
challenges the use of the acquitted conduct at sentencing.
He also maintains that his lawyer should have argued

that certain post-arrest, self-incriminating statements he made were solicited in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). We affirm.

## I. Background

In September 2007, a Cook County circuit judge issued a search warrant for Waltower, as well as the first floor apartment and basement of 161 N. Lamon Avenue, in Chicago, Illinois. The warrant authorized police to seize a black 9mm handgun, any ammunition, and any documents showing residency. Although Waltower had lived at the apartment since January 2007, the apartment was not his. It belonged to his then-girlfriend, Kimesia Gooden. When police searched the apartment, they did not find Waltower, but they did recover a black 9mm semi-automatic Glock pistol, which was loaded with nine rounds; separately stored ammunition of various types; and mail addressed to Waltower (though listing a different address). Nearby, police discovered several items associated with drug trafficking—more than two-hundred plastic bags containing nearly 50 grams of crack cocaine, a scale and grinder, and $640 in cash.

A month after the search, Waltower was arrested; police interviewed him about the search of the apartment. At trial, Chicago Police Officer David Greenwood testified that he read *Miranda* warnings to Waltower and then asked him about the fruits of the search of the apartment. Waltower agreed to talk and admitted that he had purchased the pistol for $300 or $400. When asked about the drugs, Waltower said he was holding them

for someone else. Waltower was charged in a superseding indictment that comprised four counts: conspiring to possess with intent to distribute 5 grams or more of a mixture of crack cocaine and heroin, in violation of 18 U.S.C. § 846; possessing with intent to distribute 5 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Waltower sought unsuccessfully to suppress evidence obtained from his apartment, arguing that the search was not supported by probable cause. The district court denied the motion and the case proceeded to trial.

Among the key evidence at trial was Kimesia Gooden's testimony, which came in exchange for a grant of immunity. According to her, she rendezvoused with Waltower after the search. She told Waltower, "[The police] were looking for your gun." Waltower asked if the police found it. She answered that they had. Waltower subsequently asked her to "take the charge" on the gun—that is, tell the authorities that it belonged to her—and said that he would similarly cop to any drug charges. She also testified that the gun was found near the drugs in a bedroom where Waltower engaged in drug-processing activity. Officer Greenwood testified at trial, too, relating the contents of Waltower's self-incriminating statements to the jury.

The jury acquitted Waltower of the three drug-related counts but convicted him of the fourth count, being a

felon in possession of a firearm. At sentencing, however, he had less luck with the three acquittals. The district judge stated, "Unlike the jury, I believe that the evidence clearly established that Mr. Waltower was dealing drugs out of that apartment" and noted that the drugs and gun were found near each other. Thus, the district court agreed with the pre-sentence investigation report and added a four-level enhancement to the base-offense level for possessing a firearm in connection with another felony offense. In conjunction with other factors, the resulting guidelines range was calculated at 121-151 months.[1] Waltower was sentenced to the statutory maximum of 120 months in prison.

## II. Discussion

Waltower argues that the district court committed error when it considered acquitted conduct at sentencing, because the practice is unconstitutional in general and was inappropriate in his case. He also argues that his lawyer should have moved to suppress the self-incriminating statements that he made to a police officer.

---

[1] Technically, the guidelines sentence was 120 months. The statutory maximum sentence for being a felon in possession of a firearm is ten years. 18 U.S.C. § 924(a)(2). Under USSG § 5G1.1(a), where the statutorily authorized maximum sentence is above the minimum of the guidelines range, the statutory maximum becomes the guidelines sentence.

Waltower's contentions regarding the use of acquitted conduct at sentencing conflict with Supreme Court precedent, as well as this circuit's case law. His argument regarding the self-incriminating statements that he made to Officer Greenwood is best understood as an undeveloped ineffective assistance of counsel argument, best left for collateral review. *E.g., United States v. Harris*, 394 F.3d 543, 558 (7th Cir. 2005).

## A. Acquitted Conduct and Sentencing

Waltower's primary argument is that it is unconstitutional to consider acquitted conduct at sentencing. The Supreme Court has rejected that argument, stressing that a person whose acquitted conduct is considered at sentencing is not *punished* for a crime of which he has not been convicted. Rather, he is punished for the crime he did commit: and because the sentencing guidelines direct judges to look at the characteristics of the offense, relevant conduct proved by a preponderance standard can include acquitted conduct. *United States v. Watts*, 519 U.S. 148, 156-57 (1997) (per curiam) (sentence informed by acquitted conduct violates neither the Fifth Amendment's prohibition on double jeopardy nor its due-process guarantee); *see also Alabama v. Shelton*, 535 U.S. 654, 665 (2002) ("Thus, in accord with due process, [a defendant] could have been sentenced more severely based simply on *evidence* of the underlying conduct . . . even if he had been acquitted of the misdemeanor with the aid of appointed counsel.") (citations and quotation marks omitted).

The facts from *Watts* are similar to the facts underlying Waltower's conviction and sentence. A jury had convicted Vernon Watts of possessing cocaine base with intent to distribute, but acquitted him of using a firearm in relation to a drug offense. The district judge nonetheless found by a preponderance of the evidence that Watts had used a firearm in relation to the drug offense for which he was convicted. Therefore, the court added two points to the base-offense level for his possession conviction, because it was part of the offense's relevant conduct. The Ninth Circuit broke ranks with other circuits to have considered the question and held that acquitted conduct could not be considered at sentencing—under any standard of proof. A companion case, consolidated for purposes of *certiorari*, suggested that "effectively punishing [a defendant] for an offense for which she has been acquitted" constituted double jeopardy in violation of the Fifth Amendment. *United States v. Putra*, 78 F.3d 1386, 1389 (9th Cir. 1996).

The Supreme Court reversed. As for due process, the Court noted that "under the pre-Guidelines sentencing regime, it was 'well established that a sentencing judge [could] take into account facts introduced at trial relating to other charges, even ones of which the defendant [was] acquitted." *Watts*, 519 U.S. at 152 (quoting *United States v. Donelson*, 695 F.2d 583, 590 (D.C. Cir. 1982) (Scalia, J.)). The promulgation of the federal sentencing guidelines, which the Court interpreted as permitting consideration of acquitted conduct, did not alter that discretion. *Id.* at 153. "The Guidelines state that it is 'appropriate' that facts relevant to sentencing be proved by a

preponderance of the evidence, and we have held that application of the preponderance standard at sentencing generally satisfies due process." *Id.* at 156 (citing USSG § 6A1.3, comment). As for double jeopardy, the Court observed that acquittal on a criminal charge is not to be conflated with a declaration of innocence. Moreover, a defendant whose sentence is based partially on acquitted conduct has not been subjected to punishment for crimes of which he has not been convicted. "Rather, the defendant is 'punished only for the fact that the *present* offense was carried out in a manner that warrants increased punishment . . . .'" *Id.* at 155 (quoting *Witte v. United States*, 515 U.S. 389, 403 (1995)). *See also* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the . . . conduct of a person convicted of an offense . . . for the purpose of imposing an appropriate sentence."). Thus, Watts's rights were not violated when the government relitigated acquitted conduct at sentencing under a lower burden of proof. *Watts*, 519 U.S. at 156 (citing *Dowling v. United States*, 493 U.S. 342, 349 (1990)).

Much of Waltower's brief argues, in effect, that *Watts* was wrongly decided when it was decided; he argues that the distinction between being punished for acquitted conduct and being sentenced based on the *characteristics* of an offense for which a defendant has been convicted is "illusory," Appellant's Brief at 17, and that the Court was mistaken in its view that Congress had authorized the use of acquitted conduct in calculating a guidelines range, *id.* at 33. His view of the case, however, does not render its holding any less binding on lower courts.

Nor has *Watts* been overturned by the Supreme Court's line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466, 478 (2000), articulating important principles relating to the "companion right[s]" of due process and the Sixth Amendment right to a jury trial. In *Apprendi*, the Court held that any fact other than a prior conviction increasing "the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Thus, a New Jersey law failed to pass constitutional muster where it allowed for an enhanced sentence if the judge made a finding that the defendant had the purpose of intimidating his victim based on statutorily specified victim-characteristics. *See also id.* at 492-93 (noting that the required *mens rea* finding was "as close as one might hope to come to a core criminal offense 'element'"). Subsequently, in *Blakely v. Washington*, the Court clarified that, for *Apprendi* purposes, the "'statutory maximum' . . . is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. 296, 303 (2004).

The holding in *Blakely* seriously undermined the federal sentencing guidelines, even if it did not demand their demise. *See United States v. Booker*, 375 F.3d 508, 520-21 (7th Cir. 2004) (Easterbrook, J., dissenting). Yet, because the federal sentencing guidelines were binding on judges, *see* 18 U.S.C. § 3553(b)(1), a system of mandatory guidelines permitted a judge to "inflict[] punishment that the jury's verdict alone does not allow," thus "exceed[ing] his proper authority." *Blakely*, 542 U.S. at 304. That is what the Court held in *United States v. Booker*, 543

U.S. 220 (2005), although the Supreme Court struck down not the guidelines regime, but the provision that made the guidelines binding. *Id.* at 245 (excising 18 U.S.C. § 3553(b)(1) because it made the guidelines binding and § 3742(e) because it depended on their mandatory nature). *See also Cunningham v. California*, 549 U.S. 270, 292 (2007) (noting that all of the justices who decided *Booker* agreed that advisory guidelines "would not implicate the Sixth Amendment").

Freddie Booker had been convicted of possessing at least 50 grams of crack. The sentencing guidelines would have been 210-262 months, based on the evidence at trial, but Booker was sentenced to 360 months because the judge found at sentencing that Booker had possessed nearly 660 grams of crack. Under the Court's holding, Booker's sentence, based on findings not made by the jury and guidelines that were binding on judges, violated the Sixth Amendment. *Booker*, 543 U.S. at 235. Had the guidelines been merely advisory, however, it would have been constitutional for Booker to be sentenced to any reasonable sentence that did not exceed the statutory maximum. (And on appeal, we may presume that a guidelines-range sentence is reasonable. *Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007).) Indeed, on remand, Booker was given the same 30-month sentence that he had been given under the binding guidelines regime. We upheld the sentence. *United States v. Booker*, 149 Fed. Appx. 517 (7th Cir. 2005) (per curiam).

By its terms, nothing about *Booker* calls *Watts* into question. More importantly, *Booker* itself suggests that

*Watts* is still good law. In articulating requirements for district court judges who mete out sentences, Justice Breyer's portion of the opinion of the Court directs district judges to "take account of" the guidelines range, *Booker*, 543 U.S. at 259, which we know from *Watts* may properly include acquitted conduct. More importantly, in defending the remedy that the Court elected in *Booker*—excising the portion of the Sentencing Reform Act that made the guidelines mandatory, rather than striking down the statute—the Court indicated that *Watts* furthered Congress's "basic statutory goal" of diminishing sentencing disparity by basing punishment on "the *real conduct* that underlies the crime of conviction." *Booker*, 543 U.S. at 250; *id.* at 251 (citing *Watts* and its application of the broad language in USSG § 1B1.3 as an example of the sentencing regime that Congress sought to enact). It would have been odd indeed for the Supreme Court to invoke *Watts* as justification for the remedy the Court adopted in *Booker* if some aspect of the latter had rendered infirm the holding of the former.

In sum, so long as a sentence does not exceed the statutory maximum, there is no Sixth Amendment concern with the advisory guidelines scheme. Here, the district judge calculated the real offense level of Waltower's crime by reference to acquitted charges, but the information was used only to determine the (advisory) punishment for the crime of which Waltower was convicted. At that point, the district judge was free to impose any sentence so long as it was reasonable. And so long as that reasonableness determination operates within the constitutional constraints spelled out in Supreme Court

precedent, there is no constitutional infirmity. *See Cunningham*, 549 U.S. at 291-93. Because the Supreme Court has rejected due process and double jeopardy challenges to the use of acquitted conduct at sentencing, its use on an advisory basis cannot by itself furnish Sixth Amendment ammunition for excluding acquitted conduct at sentencing. *See United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) ("By freeing a district court to impose a non-guidelines sentence, *Booker* pulled out the thread that holds White's Sixth Amendment claim together."). If *Watts* is infirm, it must be based on a more direct attack—not *Apprendi* and its progeny.[2] We are the right

---

[2] *See also United States v. Booker*, 543 U.S. at 240-41 (noting, in a discussion that included *Watts*, that "[n]one of our prior cases is inconsistent with today's decision"). Justice Stevens's portion of the opinion of the Court stated that *Watts* had presented the narrow question of the interaction between double jeopardy and the guidelines. And some have taken that language as an indication that a Sixth Amendment challenge to the use of acquitted conduct at sentencing might prove meritorious. *E.g., United States v. Mercado*, 474 F.3d 654, 661 (9th Cir. 2007) (Fletcher, J., dissenting). That view does not take account of the full opinion of the Court. Justice Breyer's portion of that opinion relied more explicitly on the validity of *Watts* in justifying the case holding. *Id.* at 251. More to the point, those who maintain that the Sixth Amendment bars consideration of acquitted conduct at sentencing still need to construct an argument. Those arguments, thoughtful though they may be, *e.g., United States v. Canania*, 532 F.3d 764, 776 (8th Cir. 2008) (Bright, J., concurring), tend to war with the logic of

(continued...)

court only to allow Waltower to preserve his argument. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).

In rejecting Waltower's constitutional argument, we blaze no new trails. Every circuit to have considered the question post-*Booker*, including ours, has held that acquitted conduct may be used in calculating a guidelines sentence, so long as proved by a preponderance standard. *See, e.g., United States v. Gobbi*, 471 F.3d 302, 313-14 (1st Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005) (Sotomayor, J.); *United States v. Grubbs*, 585 F.3d 793, 799 (4th Cir. 2009); *United States v. Farias*, 469 F.3d 393, 399 (5th Cir. 2006); *White*, 551 F.3d at 385 (6th Cir. 2008); *United States v. Price*, 418 F.3d 771, 787-88 (7th Cir. 2009); *United States v. No Neck*, 472 F.3d 1048, 1055 (8th Cir. 2007); *United States v. Mercado*, 474 F.3d 654, 657 (9th Cir. 2007); *United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005); *United States v. Faust*, 456 F.3d 1342, 1347-48 (11th Cir. 2006); *United States v. Settles*, 530 F.3d 920, 923-24 (D.C. Cir. 2008). *But see United States v. Papakee*, 573 F.3d 569, 577 (8th Cir. 2009) (Bright, J., concurring) (repeating the position that using acquitted conduct at sentencing violates the Sixth Amendment and maintaining that "the myth of *Watts* has outgrown its actual holding"); *Farias*, 469 F.3d at 399 & n.15 (noting that a few district courts

---

[2] (...continued)

*Watts* and "miss[] the distinction between elements of an offense and facts relevant to sentencing." *See United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005) (Sotomayor, J.) (*Booker* does not create Sixth Amendment problems for *Watts*).

have "held or hinted" that *Booker* implicitly overruled *Watts* and collecting cases).

Although we, like the D.C. Circuit, understand why defendants consider it unfair to take acquitted conduct into account at sentencing, *Settles*, 530 F.3d at 924, their use does not violate the United States Constitution under existing doctrine. Waltower enjoys no more success with his less ambitious arguments that the use of acquitted conduct in this case was contrary to the guidelines or otherwise unreasonable. Recall, the district court determined that Waltower's adjusted base-offense level was 30 instead of 26, because the gun conduct and the drug conduct were part of the same relevant offense conduct for sentencing purposes.

Under the guidelines, the starting point to determine relevant offense conduct is USSG § 1B1.3(a)(1)(A), which is descriptively entitled "Relevant Conduct (Factors that Determine the Guideline Range)." The provision provides, in pertinent part, "Unless otherwise specified, . . . the base offense level where the guideline specifies more than one offense level . . . shall be determined on the basis of . . . all acts and omissions committed, aided, . . . procured, of willfully caused by the defendant[.]" As we have said before, a district court may consider acquitted conduct when making its USSG § 1B1.3 determination. *United States v. Hurn*, 496 F.3d 784, 788 (7th Cir. 2007).

The guideline that led to the 4-point enhancement is Section 2K2.1(b)(6), which applies a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony of-

fense." Application note 14 to this guideline specifies that the enhancement applies if the firearm "facilitated, or had the potential of facilitating another felony offense," a standard that the note teaches is met when a gun is found in close proximity to drugs or drug paraphernalia. There was ample evidence showing that the provision applied in Waltower's case: the gun was located in close proximity to 222 bags of crack, a grinder and scale, and a drug ledger. Moreover, there was evidence that Waltower regularly prepared, packaged, and stored drugs in the bedroom where the gun was found. And the handgun was loaded and accessible if he had wished to use it to protect the drug stash. These facts were sufficient to trigger the enhancement, as the unlawful possession of the firearm had at least the potential of facilitating a drug trafficking offense. *E.g.*, *United States v. Suggs*, 624 F.3d 370, 373 (7th Cir. 2010); *United States v. LePage*, 477 F.3d 485, 489 (7th Cir. 2007) ("[W]hen the guns are possessed along with the materials of a drug trafficker, it is a reasonable inference that the guns protect or embolden the criminal enterprise."). Therefore, the Court committed no error in calculating the advisory guidelines range. And although Waltower argues that we should disregard the application note to the guidelines, as it was not approved by Congress, an application note is binding authority unless it is unconstitutional, violates another statute, or is a "plainly erroneous" reading of the guideline. *United States v. Stitman*, 472 F.3d 983, 988 (7th Cir. 2007). The application note falls into none of those categories.

Nor is there an alternative basis for finding that the use of acquitted conduct is "unreasonable" under the

Sentencing Reform Act. The Supreme Court held in *Booker* that the reasonableness standard was implicit in the Sentencing Reform Act. *Booker*, 543 U.S. at 260. There is, however, an explicit statutory provision, 18 U.S.C. § 3661, that permits the use of acquitted conduct at sentencing. We will not presume that the implicit standard in the Sentencing Reform Act repeals the statutory provision authorizing the use of acquitted conduct. *See Tennessee Valley Authority v. Hill*, 437 U.S. 153, 189 (1978) (repeals by implication are disfavored).

## B. Waltower's Post-Arrest Statements

Finally, Waltower challenges the use at trial of the self-incriminating statements that he made to Officer Greenwood regarding the gun and the drugs that were found in the apartment. The vast majority of his brief devotes itself to establishing that he has not waived the issue, that we may consider his argument on a plain error standard. In arguing about the standard of review, however, Waltower has paid insufficient attention to the merits. In a single paragraph at the end of his brief, he maintains that his trial counsel "should have alleged that the statements were inadmissible on the ground that the officers on the scene failed to advise him either before or after his arrest of his *Miranda* rights . . . ." Appellant's Brief at 49.

That reads like an ineffective assistance of counsel argument. If so, the undeveloped nature of the record provides robust if unintentional support for the general rule that such a challenge is best left for a collateral

attack on the conviction. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("In light of the way our system has developed, in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."). Even construing Waltower's argument as a contention that his statements were un-Mirandized and applying his favored standard of review, his case founders on the merits. Waltower points to no evidence indicating that he was not given *Miranda* warnings. Nor does he maintain that the error affected his substantial rights; there was other evidence that pointed to his guilt, including the testimony of his ex-girlfriend who said that the gun belonged to Waltower and mail addressed to Waltower that was located at the apartment. He has not established any error, much less error that is plain.

### III.  Conclusion

For the reasons set forth above, we AFFIRM the judgment of the district court.