In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 20-2721

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRENT SLONE,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:20CR007-001 — **Jon E. DeGuilio**, *Chief Judge.*

---

ARGUED MARCH 3, 2021 — DECIDED MARCH 10, 2021

---

Before MANION, WOOD, and ST. EVE, *Circuit Judges.*

MANION, *Circuit Judge.* After federal agents discovered guns and drugs in a basement apartment where Trent Slone recently lived, a jury found him guilty of possessing firearms as a felon but acquitted him of possessing methamphetamine with intent to distribute. In calculating Slone's imprisonment range under the Sentencing Guidelines, the district court applied a four-level enhancement under U.S.S.G.

§ 2K2.1(b)(6)(B) for possessing the firearms "in connection with another felony offense," namely, drug trafficking. Slone appeals his sentence, arguing that the court erred by applying the enhancement because he was acquitted on the drug charge and no evidence supports the conclusion that his firearms facilitated drug trafficking. Because the district court did not clearly err in finding that there was a connection, and the court emphasized that it would impose the same sentence regardless of the guidelines range, we affirm.

## I. Background

Slone came to the attention of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Drug Enforcement Agency (DEA) in October 2019 after informants reported that he was selling methamphetamine out of his residence in South Bend, Indiana. At that time, Slone had been living in the basement apartment in a house owned by his friend Sam Dillon for several years. On December 5, 2019, agents searched Dillon's house and, in the basement, found two guns—a handgun and a rifle—over 80 grams of meth, and paperwork in Slone's name. Dillon and another resident informed the agents that Slone had been living in the basement but had recently moved out, leaving many of his possessions behind. (Dillon ordered Slone out after Slone entertained a girlfriend in one of the upstairs bedrooms.) They added that they knew Slone sold meth. About two weeks later, agents found Slone staying at a friend's place. A search revealed a small amount of meth, a scale, and baggies in the apartment and a revolver in the friend's van, which she said Slone had been borrowing.

The agents interviewed Slone, who admitted that he had dealt meth, "often" stayed in Dillon's basement, and that, at the end of summer, he had purchased the two guns found in the basement. Although he maintained that the dealing was in his past, he confessed that he had sold meth in quantities ranging from grams to pounds and had acted as a middleman on large transactions. As for the revolver found in his friend's van, he said that it was not his, but he had moved it into the van.

Slone was charged with possessing with intent to distribute the 80 grams of methamphetamine found in Dillon's basement, 21 U.S.C. § 841(a)(1), and illegally possessing firearms as a felon (he had pleaded guilty to felony non-payment of child support more than a decade earlier). 18 U.S.C. § 922(g)(1). While in pretrial custody, Slone was recorded asking an acquaintance to tell a friend to claim ownership of the guns "found in my shit," because "apparently my felony did not go away."

At Slone's two-day jury trial, several witnesses testified to Slone's involvement in meth trafficking. Dillon testified that he routinely purchased from Slone 3.5-gram quantities of meth worth about $100. And the informant who initially alerted the government to Slone's drug activities described two occasions in Fall 2019 when she picked up over a pound of meth, each worth about $10,000, from Slone in the basement.

Two ATF agents who participated in the investigation also testified that the 80 grams of meth found in the basement were probably intended for distribution, not personal use. One noted that it was packaged in individual bags and accompanied by a digital scale, which indicated drug

trafficking. The other added that 80 grams was a "dealer quantity" of meth worth about $1,200, and no one was likely to possess such a large amount for personal use.

Slone testified in his own defense and tried to distance himself from Dillon's basement, averring that he lived in a room upstairs, everyone in the house used the basement, and he had moved out and removed his belongings over a month before the December 5 raid. He also denied ownership of the firearms, contradicting his previous statements to ATF agents, and he produced a witness who claimed them. But every other witness who testified on the subject, even Slone's witness, confirmed that Slone lived in the basement; Dillon repeatedly stated that the basement was solely Slone's "domain." And, Dillon added, although he kicked Slone out sometime before Thanksgiving 2019, "pretty much all" of Slone's stuff was still there on December 5, and he still had access to the basement—Slone kept his keys and Dillon did not change the locks until months after the raid.

The jury acquitted Slone on the drug charge but convicted him on the firearm charge, and the district court sentenced him to 41 months' imprisonment, at the bottom of his guidelines range of 41–51 months. In calculating the guidelines range, the court added two offense levels for obstruction of justice (based on Slone's and his friend's perjury at trial). And, as relevant here, it applied a four-level enhancement, over Slone's objection, under U.S.S.G. § 2K2.1(b)(6)(B) upon concluding that Slone possessed the firearms "in connection with" the felony offense of meth trafficking. The court noted that two of the guns, which Slone admittedly purchased, were in the basement where he recently lived near a dealer's quantity of meth and drug trafficking paraphernalia. And other

evidence—Slone's statements to ATF agents and the inform-ant's testimony—supported a finding that he had been deal-ing out of the basement for some time before his arrest. There-fore, the guns potentially facilitated distribution regardless of whether the 80 grams seized in December were Slone's.

The court went on to state that, even if the enhancement did not apply (and the range was therefore 27 to 33 months), *see* U.S.S.G. § 5A, it would impose the same 41-month sen-tence based on its consideration of the factors under 18 U.S.C. § 3553(a). The court explained that, even if Slone did not pos-sess the firearm in connection with drug dealing, he had ad-mitted to recent involvement in the meth trade, and the evi-dence supported a finding that he had been a meth distribu-tor. The court concluded that a lower guidelines range would not account for that aspect of Slone's history, or the need to protect the public, and an upward variance to 41 months would thus be warranted.

## II. Analysis

Slone's sole argument on appeal is that the district court erred by imposing the four-level enhancement under § 2K2.1(b)(6)(B) for possessing firearms "in connection with" drug trafficking. He urges that his acquittal on the possession-with-intent charge made the enhancement inapplicable and that, because he had moved out of the basement before the December 5 raid, the government did not have sufficient evi-dence to connect him or the guns to the 80 grams of meth. He also asserts that the government provided no evidence that he ever possessed the guns while engaging in the other alleged drug dealing. This Court reviews the application of the sen-tencing guidelines *de novo* but the underlying factual findings

for clear error. *United States v. Clinton*, 825 F.3d 809, 811 (7th Cir. 2016).

To begin, we note the futility of Slone's guidelines-based arguments. Even if the district court erred by applying the four-level enhancement, Slone cannot show any prejudice from that decision. After a thorough review of the § 3553(a) factors, the court explained that Slone's (otherwise unaccounted for) criminal activity and the need to protect the public demanded a 41-month sentence regardless of the guidelines range. The court's analysis reflects careful consideration of Slone's circumstances and the available sentencing options, so any error in applying the enhancement would be harmless. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346–47 (2016); *United States v. Snyder*, 865 F.3d 490, 500–01 (7th Cir. 2017) (collecting cases).

Regardless, the district court did not err; the record contained ample support for its finding that Slone possessed guns in connection with felony meth trafficking. Though he was acquitted of drug possession, sentencing courts may consider acquitted conduct provided that its findings are supported by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 154 (1997); *United States v. Holton*, 873 F.3d 589, 591 (7th Cir. 2017). There was more than enough evidence to meet that threshold here.

First, the proximity of the guns in the basement to 80 grams of meth, baggies, and a digital scale alone supports the enhancement. Application Note 14(B) creates a presumption that the § 2K2.1(b)(6)(B) enhancement is warranted whenever guns are found "in close proximity to drugs … or drug paraphernalia." *See Clinton*, 825 F.3d at 812. Although Slone insists that the government lacked evidence connecting him to the

drugs found in the basement because he moved out before the ATF raid, the owner of the house testified that the basement was Slone's "domain" and that most of his belongings were still present on December 5. Plus, Slone was recorded saying that the guns were found "in my shit." And in his statements to agents, he admitted to dealing meth. Therefore, a preponderance of the evidence supports a connection between the drugs and the guns found in the raid of the basement apartment.

Second, even without considering the drugs seized in the raid, the record contained abundant evidence that Slone was dealing meth, and thus his guns had the "potential of facilitating" that activity. § 2K2.1(b)(6)(B), cmt. n.14(A). Slone admitted to dealing meth and acting as a middleman for quantities ranging from grams to pounds. Further, Dillon testified that he routinely purchased meth from Slone, and the ATF informant testified that in fall 2019 she twice picked up pounds of meth worth $10,000 from Slone in the basement.

Slone protests that no evidence connects the guns to any of that trafficking. But the government did not need to show that Slone ever carried or brandished the gun during a sale for the enhancement to apply; a gun that is available to protect a drug stash has the potential of facilitating drug trafficking. *See United States v. Waltower*, 643 F.3d 572, 578 (7th Cir. 2011). Here, the district court reasonably inferred that the guns—which Slone admitted to purchasing that summer and which were found in his living space—were likely present in the basement during pre-raid sales and thus had the potential to facilitate his sales of large quantities of drugs. *See United States v. LePage*, 477 F.3d 485, 489–90 (7th Cir. 2007) (affirming application of enhancement where evidence showed defendant

was a drug trafficker and it was "a reasonable inference that the guns protect or embolden the criminal enterprise"); *cf. Clinton*, 825 F.3d at 813–14 (noting that large amounts of drugs or cash on premises can show gun had potential to facilitate drug trafficking, but enhancement unwarranted where no evidence showed a "significant amount" of drugs or cash were ever kept at house where gun was found).

AFFIRMED