In the

# United States Court of Appeals

## for the Seventh Circuit

No. 21-3305

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DERRICK DION INGRAM,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:21-CR-30009-DWD — **David W. Dugan**, *Judge.*

ARGUED APRIL 14, 2022 — DECIDED JULY 21, 2022

Before SYKES, *Chief Judge*, and HAMILTON and SCUDDER, *Circuit Judges*.

SYKES, *Chief Judge*. Police officers in Granite City, Illinois, conducted a traffic stop in a known drug-trafficking area and found Derrick Ingram, a passenger in the vehicle, in possession of a loaded handgun and small quantities of methamphetamine and cocaine. Ingram pleaded guilty to unlawfully possessing a firearm as a felon. At sentencing the district judge added four offense levels to the Guidelines

calculation after finding that Ingram possessed the firearm "in connection with" another felony—namely, felony drug possession. *See* U.S.S.G. § 2K2.1(b)(6)(B). The judge then sentenced Ingram to 72 months in prison, an upward variance from the 46 to 57 months advisory range under the Sentencing Guidelines.

Ingram contends that the judge erred by applying the sentencing enhancement and abused his discretion by imposing the upward variance. We disagree. Ingram possessed both the handgun and drugs as he left a known drug-trafficking area and fled on foot when the police initiated the traffic stop. From these facts the judge found that Ingram's handgun facilitated his drug possession. That finding was not clearly erroneous, making application of the enhancement proper. Nor did the judge abuse his discretion with the upward variance, which was justified by Ingram's criminal history and dangerous conduct during his arrest. We therefore affirm.

## I. Background

On October 15, 2020, police officers patrolling in a known drug-trafficking area in Granite City observed a vehicle commit a traffic violation as it left the vicinity. They initiated a traffic stop. When the vehicle stopped, the passenger—later identified as Ingram—fled on foot while clutching something at his waistband. The officers pursued him. During the chase, Ingram jumped over a fence into a back-yard, then tried to escape over another fence into an alley. But his pants caught on the fence and he fell. As he struggled to free himself, the officers saw a handgun in his right hand. An officer deployed a Taser, and Ingram dropped the gun. As the officers closed in, Ingram reached for the fire-

arm, but the officers physically restrained him before he could retrieve it. When Ingram was finally secured, the officers recovered the gun, a loaded Stoeger .40-caliber semiautomatic.

The officers searched the vehicle and found a bag containing Ingram's identification card, 1.47 grams of cocaine, and .85 grams of methamphetamine. Ingram admitted that the drugs were his. He also admitted to being a longtime drug user and dealer, though he did not admit that he was dealing drugs on this occasion.

Ingram pleaded guilty to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). The government asked the judge to apply § 2K2.1(b)(6)(B), which adds four offense levels to the Guidelines calculation if a defendant "used or possessed any firearm … in connection with another felony offense." The government argued that the enhancement applied based on either felony drug possession or trafficking. Ingram opposed the enhancement, asserting that he possessed the gun for personal protection and not in connection with another crime.

At the sentencing hearing, the judge found a sufficient connection between the handgun and felony drug possession to apply § 2K2.1(b)(6)(B). Ingram had carried both his firearm and drugs in public and then fled with the gun when confronted by the police. The presentence report, which the judge adopted, emphasized that Ingram had just left a known drug-trafficking area when he fled. The judge also mentioned that Ingram had a history of dealing drugs, but he did not specifically find that Ingram was engaged in drug trafficking at the time of his arrest.

The judge accepted the Guidelines calculations in the presentence report and arrived at an advisory sentencing range of 46 to 57 months in prison. He imposed an above-Guidelines sentence of 72 months. The judge found that Ingram's decision to flee from the police with a loaded handgun—and worse, to reach for it after being Tased and as officers closed in—revealed the need to protect the public from his conduct and deter him and others from like acts. More troubling yet, this extreme conduct came from a habitual offender with a criminal history spanning over 30 years and having many prior convictions for drug and gun crimes.

Ingram appealed, arguing that the judge erred by applying the four-level enhancement in § 2K2.1(b)(6)(B) and abused his discretion by imposing a substantively unreasonable prison sentence.

## II. Discussion

We first consider the application of § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony. This sentencing enhancement applies when a preponderance of the evidence connects the defendant's use or possession of a firearm to another felony offense, even if the defendant was neither charged for nor convicted of the second crime. *See United States v. Slone*, 990 F.3d 568, 572 (7th Cir. 2021). The government contends that the application of the enhancement in Ingram's case is supported by either felony drug possession or felony drug trafficking. The judge's statements at sentencing, however, do not include a clear finding that Ingram possessed the gun in connection with drug trafficking. So we consider only the drug-possession theory.

Ingram admits that he possessed both the drugs and the handgun at the time of his arrest. He also concedes that his drug possession was a felony. *See* 720 ILL. COMP. STAT. 646/60(b)(1); *id.* § 570/402(c). The sole disagreement is whether the firearm was used or possessed "in connection with" the felony drug possession. The judge determined that it was. The application of § 2K2.1(b)(6)(B) hinged on this conclusion, making it a mixed question of law and fact that we review for clear error. *United States v. Meece*, 580 F.3d 616, 620–21 (7th Cir. 2009).

We have held that the nexus element in § 2K2.1(b)(6)(B) is satisfied only when the firearm "had some purpose or effect in relation to" another felony. *United States v. LePage*, 477 F.3d 485, 489 (7th Cir. 2007). The Sentencing Commission's commentary to the Guidelines confirms this understanding, explaining that the enhancement applies "if the firearm … facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) cmt. n.14(A).[1] Under this standard, the coincidental presence of a firearm is insufficient to sustain the enhancement. *United States v. Haynes*, 179 F.3d 1045, 1047 (7th Cir. 1999).

We have previously affirmed the application of § 2K2.1(b)(6)(B) in cases involving defendants who possessed a firearm in connection with a drug-trafficking offense, *e.g.*, *LePage*, 477 F.3d at 489–90, but we have yet to do so for simple drug-possession felonies. We considered the issue in *United States v. Briggs*, 919 F.3d 1030, 1031 (7th Cir.

---

[1] The application note elsewhere elaborates on the enhancement's application to drug-trafficking offenses but does not provide further guidance for simple drug-possession felonies. U.S.S.G. § 2K2.1(b)(6)(B) cmt. n.14(B).

2019), where the district court applied the enhancement to a felon found with both guns and cocaine in his home. We vacated the sentence because the judge had made no factual finding connecting the firearms and the drug possession; as we explained, "the mere fact that guns and drugs are found near each other doesn't establish a nexus between them." *Id.* at 1032–33. The judge had not found, for example, that the firearms "emboldened" the drug possession or were intended to "protect" the stash. *Id.* at 1033.

In this case the judge did more than note spatial proximity between Ingram's handgun and his drugs. He stressed that Ingram chose to carry a loaded gun and drugs in public and then fled with the gun when confronted by the police. This amounts to a finding that the firearm emboldened Ingram to possess the drugs in public, and in a known drug-trafficking area no less. In other words, the handgun facilitated or had the potential to facilitate the drug possession, making application of the enhancement proper.

This conclusion finds support from our sister circuits. Those to consider § 2K2.1(b)(6)(B) as applied to defendants carrying a firearm and drugs in public have affirmed its application where there are indications that the firearm emboldened a felony drug-possession offense. *See United States v. Jarvis*, 814 F.3d 936, 937–38 (8th Cir. 2016) (holding that the enhancement applied where the police found a loaded gun and heroin in the same pocket during a pat-down search); *United States v. Jenkins*, 566 F.3d 160, 164 (4th Cir. 2009) (holding that the enhancement applied where the defendant carried a revolver and cocaine into a dangerous area late at night); *cf. United States v. West*, 643 F.3d 102, 116 (3d Cir. 2011) (holding that the enhancement did not apply

where a gun and drugs were found in different parts of a vehicle and no other facts connected the two); *United States v. Jeffries*, 587 F.3d 690, 694–95 (5th Cir. 2009) (same).

Ingram insists that he possessed the gun for personal protection and not in connection with the drugs. He claims that he was a witness in a murder case and that his car had been shot at just two weeks earlier. As the judge observed, however, a firearm might be carried for multiple purposes. He found that the handgun facilitated the drug possession even if it was also for personal protection. That finding was not clearly erroneous and, accordingly, the judge properly applied the sentencing enhancement.

We need not address the government's back-up argument that application of § 2K2.1(b)(6)(B), even if error, was harmless. A brief detour into the issue is warranted nonetheless. We may find a Guidelines error harmless if a district court explains that a "technical guideline question simply did not matter to the court's final sentencing decision." *United States v. Marks*, 864 F.3d 575, 582 (7th Cir. 2017). Such an explanation normally comes at the sentencing hearing, where a judge can explain in open court why 18 U.S.C. § 3553(a) warrants a particular sentence notwithstanding the proper application of the Guidelines.

In this case the judge did not say at the sentencing hearing that the same sentence should stand in the event of a Guidelines error. He instead checked a box on a fillable form accompanying the judgment indicating: "In the event the guideline determination(s) made in this case are found to be incorrect, the court would impose a sentence identical to that

imposed in this case."[2] A posthearing statement like this one lacks the meaningful engagement with § 3553(a) that comes with talking through the issue in open court. Moreover, such a bare, boilerplate assertion—"a conclusory comment tossed in for good measure"—will not ordinarily suffice to hold a Guidelines error harmless. *United States v. Asbury*, 27 F.4th 576, 581 (7th Cir. 2022) (quotation marks omitted).

With our detour complete, the last issue is whether the above-Guidelines sentence was substantively reasonable. Sentencing decisions are within the discretion of the district court and reviewed for reasonableness. *Gall v. United States*, 552 U.S. 38, 46 (2007). An upward variance will be upheld "so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a)." *United States v. McIntyre*, 531 F.3d 481, 483 (7th Cir. 2008). "An above-[G]uidelines sentence is more likely to be reasonable if it is based on factors sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes." *United States v. Jackson*, 547 F.3d 786, 792–93 (7th Cir. 2008) (quotation marks omitted).

---

[2] The "Statement of Reasons" form is issued by the Judicial Conference and must be filed with the Sentencing Commission after the entry of judgment. *See* 28 U.S.C. § 994(w)(1)(B); *see also United States v. Lee*, 897 F.3d 870, 874 (7th Cir. 2018). The box checked in this case does not appear on the standard form provided on the federal judiciary's website, *Judgment in a Criminal Case*, U.S. CTS. (Sept. 2015), https://www.uscourts.gov/sites/default/files/ao245sor.pdf, so we surmise that this statement was added to the form by the judge or someone else in the district court.

Ingram argues that the variance created a disparity with similarly situated offenders. The judge justified the upward variance in part based on Ingram's dangerous conduct during the arrest. That conduct, Ingram contends, was already accounted for elsewhere. Danger is inherent in all felon-in-possession cases, and the sentencing calculation included two levels pursuant to U.S.S.G. § 3C1.2 for reckless-ly endangering others while fleeing law enforcement.

The judge did more, though, than note that Ingram's conduct was dangerous in some stock sense. Just reaching for a gun while fleeing is sufficient to trigger § 3C1.2. *United States v. Easter*, 553 F.3d 519, 524 (7th Cir. 2009). Here Ingram attempted to retrieve the gun after being Tased and as officers closed in. The reasonable inference is that Ingram desperately wanted to shoot the officers or at least threaten to do so in order to escape. This extreme conduct occurred after an unfortunately lengthy string of prior convictions and arrests, many involving drugs or firearms. The "con-junction" (as the judge put it) of Ingram's dangerous con-duct during his arrest and his criminal history revealed an especially great disrespect for the law and demonstrated a heightened need to protect the public from Ingram and deter him and others. *See* § 3553(a).

The judge's analysis hewed closely to the facts of Ingram's case in particular. The analysis was also logical; as we have explained, firearm possession by a felon who exhibits particularly lawless behavior generally warrants a lengthier sentence than a "run-of-the-mill" § 922(g)(1) offender. *United States v. Ballard*, 12 F.4th 734, 744–45 (7th Cir. 2021). The result was a substantively reasonable sen-tence.

AFFIRMED